## RICHARD L. LINDSTROM AND ANOTHER v. YELLOW TAXI COMPANY OF MINNEAPOLIS.

214 N. W. 2d 672.

January 25, 1974—No. 43861.

*Larkin, Hoffman, Daly & Lindgren* and *James P. Larkin,* for appellant.

*Ramier & Hynes* and *Rodney M. Hynes,* for respondents.

Heard before Knutson, C. J., and Otis, Peterson, and Mulally, JJ., and considered en banc.

EDWARD D. MULALLY, JUSTICE.*

This is an action to recover damages sustained by plaintiffs while passengers in defendant's taxicab. The jury returned a ver-

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

dict for the defendant. Plaintiffs moved for judgment notwithstanding the verdict or in the alternative for a new trial. A new trial was ordered on the ground that the court committed an error of law in instructing the jury on two conflicting standards of care applicable to defendant, a common carrier. Defendant appealed from the order granting the new trial, claiming that the court had abused its discretion.

The accident occurred during the evening of April 11, 1969, near the intersection of Highways Nos. 55 and 62, when the taxicab suddenly swerved to the right, injuring plaintiffs. The parties are not in agreement as to why the taxicab swerved. However, there was no contact with any other vehicle. Plaintiffs testified that the cab driver was in the left lane going north on No. 55, approaching the intersection with No. 62, at a speed of 60 to 65 miles per hour; that he suddenly turned to the right, hit his brakes, went into the ditch, and came out again; and that they did not see any other vehicle which could have caused the cab to swerve. Plaintiffs further testified that they had never given any different version of how the accident happened, nor had they discussed the details of the accident with anyone.

In its instructions to the jury, the court defined negligence in terms of the reasonably-prudent-person standard of care, basically as set out in Minnesota Jury Instruction Guides, Instruction 101.[1]

The court also gave the definition of a common carrier and

---

[1] "Now, I have used and I will be using certain words like negligence and direct or proximate cause, burden of proof. I want to try to define some of those for you.

"First, as to negligence. Negligence is the doing of an act which an ordinary, reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, actuated by those considerations which ordinarily regulate the conduct of our human affairs under like or similar circumstances. Negligence is the failure to use ordinary or reasonable care in the management of one's person or property. Negligence can be positive or negative. It may be an act of commission, or it may be an act of omission."

instructed the jury that a common carrier has a duty to use the highest degree of care for the safety of its passengers consistent with the practical operation of its business.[2] Although Minnesota does not have a statute imposing a degree of care upon common carriers and specifically a taxicab company, this court has held that they are bound to the highest degree of care. Ford v. Stevens, 280 Minn. 16, 19, 157 N. W. 2d 510, 513 (1968); Fieve v. Emmeck, 248 Minn. 122, 126, 78 N. W. 2d 343, 347 (1956); McKellar v. The Yellow Cab Co. 148 Minn. 247, 250, 181 N. W. 348, 349 (1921). See, Annotation, 75 A. L. R. 2d 988, 990; 14 Am. Jur. 2d, Carriers, § 918; 3A Dunnell, Dig. (3 ed.) § 1261; 13 C. J. S., Carriers, § 685.

Continuing with related instructions, the court instructed the jury on the common-law rules of the road, using the term "reasonable care" twice, and referring to a driver's duty to "use all reasonable means at his disposal to avoid an accident."[3] The

---

[2] "Now, a common carrier has a duty to use the highest degree of care for the safety of its passengers consistent with the practical operation of its business. The highest degree of care means the utmost caution used by very careful persons. The failure of a common carrier to use that degree of care, that kind of care that I have just described to you, is negligence."

[3] "Now, I want to give you certain rules of the road, and they are simply these: The roads are for the use of everyone, and everyone has the same right to use them that anybody else has, but everybody that does use them is obliged to use such care that it will not result in injury to others or unduly inconvenience them.

"And I instruct you that it is not due care to depend upon the exercise of care by another when that dependence is itself accompanied by some obvious danger. Drivers of motor vehicles on our streets and roads are under certain legal duties and obligations that they are required to observe. It's their duty to keep a reasonable lookout, to make reasonable observation of the conditions of the weather, the time of day or night, the conditions of the highway, the traffic, and to keep his motor vehicle under reasonable control, and to proceed at a reasonable rate of speed under the conditions at that time and place, and to exercise reasonable care to prevent doing harm or injury to others who are lawfully pres-

court's instructions on sudden emergency referred to the carrier's highest degree of care. In instructing the jury on proximate cause, the court used the phrase "a person ought in the exercise of reasonable care."[4]

Upon completion of the court's charge to the jury, plaintiffs objected to the court's instructions relative to the standard of reasonable care rather than the highest degree of care and contended that the instructions were ambiguous and confusing as to the degree of care required. The court overruled plaintiffs' objections and submitted the case to the jury. Some 2½ hours later, the jury requested additional instructions as to the factors to be considered in determining negligence. Plaintiffs renewed their objections to the instructions on the basis that conflicting standards of care had been given.

The court concluded that under Urban v. Minneapolis St. Ry. Co. 256 Minn. 1, 96 N. W. 2d 698 (1959), and Flaherty v. Minneapolis & S. L. Ry. Co. 251 Minn. 345, 87 N. W. 2d 633 (1958), it had committed error in giving both the highest-degree-of-care

---

ent on the highway; or, in this case, who are passengers in their cab.

"One who is using the streets or roads has the right to assume that all about him will use reasonable care and that those around about him will not violate any law of the road or be negligent, and he is entitled to go ahead on that presumption. Then if and when the contrary does appear, if he finds that someone around about him is disobeying the law or is negligent, then he must use all reasonable means at his disposal to avoid an accident."

[4] "The law is that if an act is one which a person ought in the exercise of reasonable care to have anticipated was likely or liable to result in injury to others, then he or it, if it's a company, is responsible for any injuries which proximately result from his conduct, even though he could not have anticipated the particular injury which did follow or happen. Consequences which follow in an unbroken sequence without any intervening, efficient, interrupting cause from the original negligent act are the natural, direct and proximate results of that act, and for those consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which actually did follow or happen."

standard for a common carrier (Instruction 376) and the reasonable-care standard (Instruction 101). The court then proceeded to reinstruct the jury by rereading Instruction 101, telling the jury to disregard it, and telling them the only standard of care applicable to the defendant in this case is that of the highest degree of care consistent with the practical operation of its business (basically as set out in Instruction 376). The jury foreman then requested a listing of the negligence factors enumerated by plaintiffs' counsel in his final argument. The court answered by saying:

"* * * [Y]ou should in your deliberations, as far as the law that you are to apply in this case, consider only what I told you this morning and now this afternoon, along with the corrective instructions that I have given you with reference to what I said this morning; and those things and those only should be considered."

On April 20, 1972, the jury returned a general verdict in favor of defendant. On June 7, the court granted plaintiffs' motion for a new trial solely on the ground that the court had committed an error of law in instructing the jury on two conflicting standards of care applicable to the defendant.

■ The primary issue for consideration by this court is whether the trial court abused its discretion by granting plaintiffs' motion for a new trial. We hold that it did not.

Defendant submits that the supplemental instructions cured any error existing in the original instructions and that in any event plaintiffs acquiesced in those corrective instructions and allowed the case to go to the jury on that basis. This latter contention is a factually debatable point at best. In any event, this court has held that the duty or degree of care imposed on a party is fundamental law and objections to instructions relative thereto could be assigned for the first time in a motion for a new trial. Trudeau v. Sina Contracting Co. Inc. 241 Minn. 79, 62 N. W. 2d 492 (1954). Rule 51, Rules of Civil Procedure, provides in part:

"* * * An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court."

Defendant further argues that the trial court should have declared a mistrial if it thought the jury was confused, but when it determined that the error could be cured by further instructions, the trial court was bound by its choice. Defendant cites no authority for this proposition, and none has been found.

It is basic that a jury instruction may not be attacked successfully by lifting a single sentence or word from its context. Instead it must be construed as a whole and tested from the standpoint of its total impact on the jury. Zurko v. Gilquist, 241 Minn. 1, 62 N. W. 2d 351 (1954); Froden v. Ranzenberger, 230 Minn. 366, 41 N. W. 2d 807 (1950).

Errors are likely to be considered fundamental or controlling if they "destroy the substantial correctness of the charge as a whole," [5] cause a miscarriage of justice, [6] or result in substantial prejudice. [7]

Where the instructions are misleading and conflicting on a material issue, a new trial should ordinarily be granted unless the error is cured by withdrawal of the defective instruction. "But an erroneous statement of the law clearly applicable to the facts of the case is not cured by subsequent correct instructions which do not specifically correct the misstatement." 19A Dunnell, Dig. (3 ed.) § 9796.

The crux of this issue is how many of the original instructions were permeated by the error of failing to instruct on the highest degree of care. Defendant views the error on the standard of care as limited to the single instruction on the ordinary-care standard

---

[5] Adelmann v. Elk River Lbr. Co. 242 Minn. 388, 396, 65 N. W. 2d 661, 667 (1954).

[6] Sassen v. Haegle, 125 Minn. 441, 444, 147 N. W. 445, 446 (1914).

[7] Anderson v. Mid-Motors, Inc. 256 Minn. 157, 163, 98 N. W. 2d 188, 192 (1959).

(Instruction 101), which was cured by the trial court's withdrawal and corrective instructions. Plaintiffs submit that the fundamental error was not limited to the court's giving of Instruction 101 but involved repeated references to the ordinary-care standard in related instructions in the charge on common-law rules of the road and proximate cause. It was apparent to the trial court, as it is to this court, that the error was not limited to the giving of Instruction 101 but included repeated references to the ordinary-care standard. The corrective instructions failed to convey clearly to the jury the single standard of care applicable to a common carrier. This court has said:

"The granting of a motion for a new trial on the ground of erroneous instructions to the jury, unlike a denial thereof, rests largely in the sound discretion of the court, and its decision will not be disturbed on appeal unless there has been a clear abuse of that discretion." Storey v. Weinberg, 226 Minn. 48, 51, 31 N. W. 2d 912, 914 (1948).

There was no abuse of discretion by the trial judge and the order granting a new trial is affirmed.

■ Defendant purports to appeal also from the trial court's order excluding from the plaintiffs' hospital records entries relating to the manner in which the accident occurred. While the order is not subject to review by this court as a matter of right, in view of the fact that the trial court may again be called upon to rule as to the admissibility of these disputed entries, we will, pursuant to Rule 103.04, Rules of Civil Appellate Procedure,[8] review the issue on the supposition that by so doing another appeal might be avoided.

After the accident, plaintiffs were taken to Eitel Hospital for

---

[8] Rule 103.04(2), Rules of Civil Appellate Procedure, provides: "On appeal from an order the Supreme Court may review any order affecting the order from which the appeal is taken and on appeal from a judgment may review any order involving the merits or affecting the judgment. It may review any other matter as the interests of justice may require."

emergency treatment and the next day, April 12, 1969, were hospitalized at Swedish Hospital. In connection with proving their injuries, plaintiffs offered into evidence certain hospital records subject to the court's prior order expunging all references to the cause of the accident. Over the objection of defendant, the hospital records were received as offered. Defendant then offered the expunged materials,[9] which included the Eitel Hospital record made by Dr. Edelman who was not available at trial, as well as entries in the Swedish Hospital records made by Dr. Ignacio, the doctor who made the admission examinations of plaintiffs who was likewise not available,[10] and the report

---

[9] The hospital records and expunged portions in dispute in this appeal are:

(a) Eitel Hospital clinical record for Jane and Richard Lindstrom, identified as Exhibit H. The expunged portions were identical for both plaintiffs. The record indicates patient was in the Yellow Cab which turned suddenly to avoid an accident.

(b) Swedish Hospital records for Richard Lindstrom from April 12 to 16, 1969, identified as Exhibit J. The expunged portions were on page 1 of Exhibit J: "He was riding in a Yellow Cab in the back seat and with his wife coming from the airport, and going west on 494 (sic) when a car came in from the north on 35W (sic) and swerved over toward the cab. The cab had to take evasive action and sudden braking, and the wife and husband were thrown around to the bottom of the cab." On page 6 of Exhibit J the following was excised: "This 55 year old white male just came back from a trip from Kansas City with his wife and had a car accident last night when the cab they were riding in tried to avoid another car which would bump them." On page 7 of Exhibit J the expunged material concerned notes signed by Dr. Mattson, a detailed description, and included a diagram of the accident and the manner in which it happened.

(c) Swedish Hospital records for Jane Lindstrom from May 15 to 30, 1969, identified as Exhibit R. The expunged portion said, "This 50 year old white female together with her husband was involved in a car accident last night when the car they were riding [in] was trying to avoid another car which would possibly hit them."

[10] The court assumed that Doctors Edelman and Ignacio were unavailable in order to make the thrust of its rulings on the expunged records clear.

of Dr. Mattson (who was the family physician and was deceased at the time of trial) to show that the accident occurred when the cab swerved to avoid an oncoming car. Defendant also offered the expunged materials for impeachment of the plaintiffs, who had denied that they ever discussed the accident with anyone or that the cab driver swerved to avoid another car. Plaintiffs' objection to defendant's offer of proof was that the hospital records were not part of the business records of the hospital. Plaintiffs' objections were sustained by the court on the "thrust of the Brown case" (presumably the trial court meant Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. 2d 688, 44 A. L. R. 2d 535 [1954]), and on hearsay.

The issue is whether the entries recorded in plaintiffs' hospital records by treating physicians concerning the cause of the accident are, when offered by the defendant, admissible as substantive evidence or for impeachment under the business-records exception to the hearsay rule when the treating physicians are unavailable, are not called, or are deceased at the time of trial.

In order to have the hospital records admitted either as substantive evidence or for impeachment, the defendant must show that the hospital record is admissible to prove that the statement was made by the patient. This is a matter of applying the rule pertaining to records kept in the regular course of business, and the primary issue is whether or not the specific entry involved was an entry made in the regular course of the hospital's business. If the entry concerns matters which under hospital practice are regarded as germane to medical history, diagnosis, or treatment, it is within the regular course of business. If, on the other hand, the entry does not relate to such subjects, it is not admissible even for the limited purpose of proving that the statement was made. It must then first be determined if the information contained in the hospital record qualifies under the business-records exception to the hearsay rule. The Minnesota Uniform Business Records as Evidence Act, Minn. St. 600.01 to 600.04. Section 600.01 provides:

"The term 'business' shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not."

Section 600.02 provides:

"A record of an act, condition, or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission."

Section 600.03 provides:

"Sections 600.01 to 600.03 shall be so interpreted and construed as to effectuate their general purpose to make uniform the law of those states which enact them."

Hospital records are considered within the purview of the business-records exception if they are made in the regular course of business. Entries made in a hospital record are made in the regular course of business if they are germane to medical history, treatment, or diagnosis. Roeder v. North American Life Ins. Co. 259 Minn. 168, 106 N. W. 2d 624 (1960); Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 80 N. W. 2d 30 (1956); Flemming v. Thorson, 231 Minn. 343, 43 N. W. 2d 225 (1950); Williams v. Alexander, 309 N. Y. 283, 129 N. E. 2d 417 (1955); Commonwealth v. Harris, 351 Pa. 325, 41 A. 2d 688 (1945); 40 Am. Jur. 2d, Hospitals and Asylums, § 43; 32 C. J. S., Evidence, § 728.

This court in Brown v. St. Paul City Ry. Co. 241 Minn. 15, 26, 62 N. W. 2d 688, 696, 44 A. L. R. 2d 535, 547 (1954), said:

"The purpose of the uniform business records as evidence act was to make it unnecessary to call as witnesses the parties who made the entries. [Citations omitted.] It was never intended to make that proof which is not proof. [Citations omitted.]"

Justification for the statute rests upon the likelihood of the trust-worthiness of the entry in the record since it probably will be relied upon in the operation of the business, and it is fair to presume that it is in the interest of the one making the entry that it be truthful and accurate. However, when the entry is not made in the regular course of business, the basic reason for truthfulness and accuracy disappears.

As to hospital records, the guarantee of trustworthiness in the records is that the physicians rely on the records to make life and death decisions. 6 Wigmore, Evidence (3 ed.) § 1707. Normally, entries in hospital records as to the manner in which the accident occurred serve no medical purpose. No reliance is placed upon them in rendering medical services. Admittedly, a hospital record entry relating to the manner in which an accident occurred could under some circumstances be germane to medical history, treatment, or diagnosis. However, that is rarely the case, and there is nothing to show that it is the case here. In words typical of those used in other cases, the Ohio Supreme Court said in Green v. City of Cleveland, 150 Ohio St. 441, 444, 83 N. E. 2d 63, 65 (1948) : "[I]t was the business of the hospital to diagnose plaintiff's condition and to treat her for her ailments, not to record a statement describing the cause of the accident in which plaintiff's injuries were sustained." The hospital record entries in this case which relate to the cause of the accident are clearly, and by the great weight of authority, not germane to medical history, treatment, or diagnosis and are not admissible under the business-records-as-evidence act for any purpose. The entries were properly excluded by the trial court.

Affirmed.

Mr. Chief Justice Sheran, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.