Gordon J. PARKER, Appellant,

v.

CRABTREE'S KITCHEN, Respondent.

No. C5–86–1657.

Court of Appeals of Minnesota.

April 28, 1987.

 

David K. Cody, St. Paul, for appellant.

John R. McBride, St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and LANSING and RANDALL, JJ.

**OPINION**

RANDALL, Judge.

Appellant Gordon Parker sued respondent Crabtree's Kitchen for injuries sustained when he fell through a trap door on respondent's premises. After a jury returned a verdict for appellant, the trial court, in an amended order, vacated the order pursuant to the special verdict and granted respondent a new trial. Gordon Parker appeals. Respondent moved to dismiss the appeal. We deny the motion to dismiss and reverse and remand with instructions.

**FACTS**

On January 18, 1984, appellant Gordon Parker ate lunch at Crabtree's Kitchen, a restaurant owned by Terrence and Beverly Bennett, which he frequented three to four times a week.

While appellant was in the restaurant, a delivery of pop was being made. The pop was generally delivered to a basement storage area, accessible through a trap door in the dining room. The trap door is located in front of the restrooms and next to a coat rack where appellant had hung his coat when he came into the restaurant. When deliveries were made, the trap door was generally leaned against the wall on which the coat rack was located. Two spindle back chairs were generally used to block customer access to the trap door area.

When appellant finished his meal, he paid and walked to the coat rack to get his coat. Another patron testified appellant had to move a chair to get to the coat rack. As appellant reached for his coat, he stepped into the hole and fell down the steps, alleg-

edly injuring his back and his knee.[1] Appellant contends the injuries interfere with his work at the minnow hatchery he owns and operates.

At trial, and in the presence of the jury, appellant's attorney pulled two "wet floor" signs out of a bag, apparently in order to establish a foundation for their introduction as evidence that warning signs were feasible. Respondent objected, and during a conference in chambers the parties agreed the signs would not be introduced. At that time, respondent stipulated to the feasibility of warning signs, but not to their availability. Appellant's counsel then questioned Terrence Bennett about warning cones respondent began to use near the open trap door after the accident. Respondent's counsel objected, based on relevancy, to the question, "Do you still use that method (two chairs to block the trap door)?" The objection was overruled. Counsel did not object to subsequent questions about the cones, and asked Bennett about the cones on redirect.

Later on, during cross and recross examination, appellant's counsel questioned Beverly Bennett about the "wet floor" warning cones. Counsel questioned Silas Brown about his observation of cones after the accident. There was no objection to these questions.

Finally, the trial judge instructed the jury that it could consider reduction of appellant's future earning capacity in determining damages. Appellant's counsel asked to approach the bench. The court then informed the jury:

> The attorneys have called to my attention the need for an instruction with respect to loss of earning capacity. That is another factor that you must consider, whether there is or is not, in reaching your verdict.

At this point, appellant's counsel interrupted to inform the court that appellant was not making a claim for loss of earning capacity, and requested that the jury be instructed to disregard any instruction on earning capacity. The court then instructed the jury to "disregard that."

After a $68,000 jury verdict in appellant's favor, the trial court granted respondent a new trial on the following grounds:

1. that appellant's counsel's production of the "wet floor" signs had an extremely prejudicial effect on the jury, depriving respondent of a fair trial, and that a curative instruction given at trial was not sufficient to mitigate the impact of that action;

2. the court erroneously allowed cross-examination on subsequent remedial acts, prejudicing respondent and depriving it of a fair trial; and

3. the court erroneously instructed the jury on loss of future earning capacity, and the giving of this instruction deprived respondent of a fair trial.

Parker appeals. Respondent moved this court, pursuant to Minn.R.Civ.App.P. 127, to dismiss the appeal on the basis of Minn. R.Civ.App.P. 103.03(d) and 127. In an order dated February 12, 1987, this court referred the motion to dismiss to the panel scheduled to hear argument on the case.

## ISSUES

1. Did the trial court err by granting respondent a new trial?

2. Was order granting a new trial appealable?

## ANALYSIS

### I.

*New Trial*

1. *"Wet Floor" Signs*

Upon respondent's motion for new trial, the court found counsel's actions prior to the attempted introduction of the signs were for the jury's benefit and had an extremely prejudicial effect on the jury that could not be cured by instruction. The trial court found that when appellant's counsel pulled "wet floor" signs out of a bag during trial, appellant had already accomplished the purpose for which he would have introduced the signs. At that time, the trial court could have granted a new

---

1. Medical testimony conflicted as to causation, severity and permanence of appellant's injuries.

trial. However, the court permitted the trial to continue after both parties stipulated in chambers on how to handle the question of feasibility of warning signs.

Respondent was willing to stipulate signs were feasible, if not available, to warn of the open trap door. In camera, respondent stated that the only thing he asked was that the jury be instructed to disregard what they saw. The court instructed the jury as respondent requested, and appellant read into the record, within the hearing of the jury, a stipulation that signs were feasible. Respondent did not move for a mistrial or otherwise preserve for appeal his dissatisfaction with the way the matter was resolved.

■ We find no "irregularity" upon which the trial court could properly have granted a new trial. Because the trial court accepted the parties' stipulation and let it be read to the jury, together with respondent's requested cautionary instruction, any claimed error resulting from appellant's actions is moot.

### 2. *Subsequent Remedial Measures*

Among the trial court's reasons for granting a new trial was the admission of evidence of respondent's use of cones to warn customers of the open trap door after appellant's accident.

Appellant contends that respondent did not object to evidence of subsequent remedial measures, therefore waiving its objection and permitting the testimony to become a part of the record the jury could consider. *See McNab v. Jeppesen*, 258 Minn. 15, 18, 102 N.W.2d 709, 711–12 (1960). *See also* Minn.R.Evid. 103(a)(1) (error may not be predicated on a ruling admitting or excluding evidence unless a timely objection on the record is made).

When appellant asked whether Mr. Bennett continued to use chairs around the trap door, respondent objected on the basis of relevancy. The trial court overruled the objection. Appellant then continued to ask Mr. Bennett whether he used any other devices to warn of danger when the trap door was open. Respondent mentioned warning cones a friend had given him after the accident. Respondent did not object to this questioning.

Respondent contends he properly objected to evidence of subsequent remedial measures on the basis of relevancy. He claims the admission of subsequent remedial measures evidence thus constituted an error of law.

■ We hold the trial court erred by granting a new trial on the basis of the subsequent remedial acts testimony. Respondent's objection preceded the questioning on subsequent remedial action, was overruled, and was not renewed. Respondent did not object to subsequent questions about the cones, but even asked further questions on that subject during redirect. Respondent could not stand by without objecting to subsequent remedial measures evidence, eliciting such evidence himself, and later complain he was prejudiced by its introduction.

### 3. *Jury instructions*

The court based the grant of a new trial in part on its erroneous instruction to the jury on loss of future earning capacity, finding that its curative instruction did not negate the error.

> No party may assign as error unintentional misstatements and verbal errors, or omissions in the charge, unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the ground of his objection.

Minn.R.Civ.P. 51. *See also Kindt v. Yellow Cab of Winona, Inc.*, 300 Minn. 190, 218 N.W.2d 459 (1974) (trial court did not err by refusing to grant a new trial where appellant did not object to jury instructions).

Respondent did not object to the instructions and did not indicate dissatisfaction with the sufficiency of the curative instruction. Appellant was the one to call to the court's attention the error in the jury instruction.

■ The granting of a motion for a new trial on the ground of erroneous jury in-

structions rests largely in the trial court's discretion. *Lindstrom v. Yellow Taxi Co. of Minneapolis*, 298 Minn. 224, 230, 214 N.W.2d 672, 677 (1974) (quoting *Storey v. Weinberg*, 226 Minn. 48, 51, 31 N.W.2d 912, 914 (1948)). However,

> [w]here the instructions are misleading and conflicting on a material issue, a new trial should ordinarily be granted *unless the error is cured by withdrawal of the defective instruction.*

*Lindstrom*, 298 Minn. at 229, 214 N.W.2d at 676 (emphasis added).

 Here, the court erred when it instructed the jury on lost earning capacity. When appellant's counsel informed the court, within hearing of the jury, that appellant was making no claim for lost earning capacity, the court instructed the jury to disregard the previous instruction. We hold this instruction cured the defective instruction, and the trial court erred by granting a new trial on the basis of its own inadvertent instruction which was cured by appellant's own suggestion.

## II.

### Motion to Dismiss

Respondent moved to dismiss this appeal, claiming the order granting a new trial was not an appealable order. An appeal from an order granting a new trial may be taken

> if the trial court expressly states therein, or in a memorandum attached thereto, that the order is based exclusively upon errors of law occurring at trial, and upon no other ground; and the trial court shall specify such errors in its order or memorandum * * *.

Minn.R.Civ.App.P. 103.03(d). "Such errors of law involve rulings made and jury instructions given or refused by the trial court." *Haugen v. International Transport, Inc.*, 379 N.W.2d 529, 531 (Minn. 1986).

 It is not necessary that the trial court employ the exact language of the rule in its order or memorandum, if it can be determined that the basis of the order is an error of law occurring at trial. *O'Brien v. Wendt*, 295 N.W.2d 367, 370 (Minn.1980).

If, upon viewing the complete record, the trial court's action can be interpreted as awarding a new trial on the basis of errors of law, an appeal is in order. *See id.*

 Under *Haugen*, rulings made and jury instructions given or refused constitute errors of law for purposes of Rule 103.03. *Haugen*, 379 N.W.2d at 532. Respondent conceded in oral argument that the court's ruling on subsequent remedial acts evidence and the error in jury instruction were errors of law.

 In its memorandum, the trial court characterized the attempt to introduce the "wet floor" signs as an "irregularity" that deprived respondent of a fair trial, as distinguished from an error of law. We do not find the supreme court's holding in *Haugen* permits a trial court to limit appealability by attaching the label of irregularity to an error of law. We hold that the court's listing of the error of law as an irregularity does not bar review.

## DECISION

The trial court erred by granting a new trial on the basis of counsel's production of signs, the feasibility of which was subject of a stipulation; counsel's examination on subsequent remedial acts; and erroneous instruction on loss of future earning capacity, which was subsequently corrected. Order granting new trial, based on errors of law and on "irregularity" cured by stipulation, was appealable.

Reversed and remanded with instructions to reinstate the jury verdict.