**Dipchan KISSOONDATH, Ann Kissoondath and Michael Heinonen, as assignees of James LaBosco, J.D. Sandstone, and J.D. Sandstone, Inc., Appellants,**

v.

**UNITED STATES FIRE INSURANCE COMPANY, d/b/a Crum & Forster Commercial Insurance Company, a foreign corporation, Respondent.**

No. C4–00–698.

Court of Appeals of Minnesota.

Jan. 23, 2001.

Michael Lewis Weiner, Christopher J. Moreland, Yaeger, Jungbauer, Barczak, Roe & Vucinovich, PLC, Minneapolis, MN, for appellants.

William M. Hart, Richard L. Pemberton, Jr., Melissa Dosick Riethof, Erica Gutmann, Strohl, Meagher & Geer P.L.L.P., Minneapolis, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, STONEBURNER, Judge, and FOLEY, Judge.

### OPINION

DANIEL F. FOLEY, Judge.*

Appellants assert that the district court committed reversible error in their bad faith claim against respondent insurer by not instructing the jury on the fiduciary duty owed by an insurer to the insured and by giving the jury an erroneous instruction on "good faith." Appellants also argue the district court committed prejudicial error when it: (1) excluded this court's opinion affirming the verdict in the underlying case; (2) admitted evidence of appellants' underinsured motorist benefits; (3) admitted evidence of an edited videotape of one of the appellants; and (4) permitted respondent's expert to impeach this court's

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

opinion that the evidence supported the damages awards in the underlying case. Lastly, appellants argue that the district court committed reversible error when it failed to grant a new trial on the basis that the evidence did not justify the verdict. Because the district court committed reversible and prejudicial error in several respects, we reverse and remand for a new trial.

## FACTS

James LaBosco d/b/a J.D.Sandstone, Inc. (insured) was insured by respondent United States Fire Insurance Company d/b/a Crum & Forster Commercial Insurance Company in July 1990 when a taxi owned by J.D. Sandstone, Inc. ran into a parked pickup truck occupied by appellants Dipchan Kissoondath and Michael Heinonen. Appellants (and Kissoondath's wife, who claimed loss of consortium) sued the taxi driver and J.D. Standstone, Inc. for injuries they allegedly sustained in the accident. Respondent accepted the defense of the claims against insured.

Respondent knew insured would most likely be found liable, but the extent of appellants' damages was hotly contested. Respondent offered the Kissoondaths $35,000 and $12,000 to Heinonen. Appellants were willing to settle for the $350,000 policy limits. The consolidated cases went to trial. A jury found the taxi driver 100 percent at fault and awarded $1,675,868.00 to Dipchan Kissoondath, $175,000 to Ann Kissoondath, and $432,758.14 to Heinonen. On appeal the verdict was affirmed and we stated: "Although the verdict is large, totaling more than $2 million, the evidence, when viewed in the light most favorable to [appellants], supports the amounts awarded." *Kissoondath v. Ammerman,* Nos. C0–95–1346, C7–95–128, 1995 WL 756840, at *2, —— N.W.2d ——, —— (Minn.App. Dec.26, 1995), *review granted* (Minn. Feb. 12, 1996) *and order granting review vacated* (Minn. June 19, 1996) (*Kissoondath I* ).

Insured assigned his "bad faith" cause of action against respondent, for failure to protect him from personal liability by settling within policy limits, to appellants. Thereafter, appellants sued respondent, alleging that respondent had breached the fiduciary duty of good faith owed to its insured.

Before trial, respondent moved to exclude evidence of this court's decision in *Kissoondath I,* which affirmed the underlying verdict for appellants. Appellants moved to exclude evidence regarding appellants' underinsured motorist benefits (UIM). Both motions were granted.

At trial, over appellants' objections, the district court allowed respondent's expert, Peter Grottodden, to testify that "[t]he [underlying] jury verdict is not supported by the evidence * * *." Respondent was also allowed to question appellants' expert witness with respect to the availability and amount of UIM benefits. In addition, over appellants' objection, the district court allowed the jury to see an edited surveillance video of Heinonen that showed him working. This video had not been shown to the jury in the underlying trial because it consisted of only about 40 minutes edited from five hours of tape. In the underlying trial, the district court had ruled that the jury should see all five hours or nothing, whereupon counsel for insured opted not to introduce the tape.

Appellants submitted a proposed jury instruction on "good faith" that included (1) language concerning the insurer's fiduciary duty to an insured; (2) a definition of a fiduciary relationship and a fiduciary duty; and (3) a list of the insurer's specific obligations. The instruction concluded with, "[respondent] failed to act in good faith towards its insureds if it failed to perform any of the above duties." The district court denied the requested instruction. The "good faith" instruction given by the district court omitted any reference to fiduciary duty, listed the specific duties of the insurer, and concluded:

No one factor in and of itself is determinative of a breach. All factors taken

together must lead you to believe that the insurance company breached its duty of good faith in order to answer question number 1 on the jury verdict form "yes."

By special verdict, the jury concluded that respondent did not breach its duty of good faith by failing to settle appellants' claims within the policy limits of the insured.

Appellants moved for a new trial arguing that the district court erred (1) in its instruction with regard to an insurer's duty to its insured under Minnesota law; (2) by admitting the edited surveillance video; (3) by excluding the court's underlying decision stating that there was substantial evidence supporting the damages award; and (4) by allowing evidence of appellants' UIM benefits and amounts. Lastly, they argued that the evidence did not justify the verdict. The district court denied appellants' motion for a new trial and this appeal followed.

## ISSUES

I. Did the district court commit reversible error by failing to instruct the jury on "fiduciary duty" in connection with instructing the jury on "good faith" and by implying that an insurer must fail to perform more than one of its obligations to an insured before it can be found not to have acted in good faith?

II. Did the district court commit prejudicial error by permitting respondent's expert to impeach this court's opinion affirming the verdict in the underlying case, excluding evidence of this court's opinion affirming the verdict in the underlying personal injury case, admitting evidence of appellants' UIM benefits and amounts, and admitting the edited surveillance video?

III. Did the district court commit reversible error by failing to grant a new trial on the basis that the evidence did not justify the verdict in the instant case?

## ANALYSIS

■ We are mindful that a district court's discretion to grant a new trial will not be disturbed absent a clear abuse of that discretion. *Halla Nursery, Inc. v. Baumann–Furrie & Co.,* 454 N.W.2d 905, 910 (Minn.1990). However, for the reasons stated in this opinion, we hold that the district court abused its discretion by denying appellants' motion for a new trial. Accordingly, we reverse and remand for a new trial.

## I.

■ Appellants argue that the district court committed reversible error in making certain evidentiary rulings and selecting the language in the jury instructions because the district court failed to follow established case law. Generally, a district court has broad discretion in making evidentiary rulings and selecting language in jury instructions. *See Kroning v. State Farm Auto. Ins. Co.,* 567 N.W.2d 42, 45–46 (Minn.1997) (question of whether to admit or exclude evidence is within district court's discretion); *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn.1986) (allowing trial court's considerable latitude in determining jury instructions). Nevertheless, a trial court is bound to follow established case law in rendering decisions with regard to the admission or exclusion of evidence and selecting the language in jury instructions. *See Greenbush State Bank v. Stephens,* 463 N.W.2d 303, 306 n. 1 (Minn.App.1990), *review denied* (Minn. Feb. 4, 1991) (district courts must decide issues in manner consistent with case law).

### A. Fiduciary Duty

■ Appellants argue that the district court committed reversible error when it (1) failed to instruct the jury that an insurer has a fiduciary duty to its insured, and (2) made evidentiary rulings that failed to take into consideration the fiduciary relationship between an insured and its insurer. An "insurer owes a fiduciary duty to the insured to represent his or her best

interests and to defend and indemnify." *Short v. Dairyland Ins. Co.,* 334 N.W.2d 384, 387 (Minn.1983). More importantly, an

> insurer's right to control the negotiations for settlement must be subordinated to the purpose of the insurance contract—to defend and indemnify the insured within the limits of the insurance contract.

*Id.*

■ Here, the district court stated that the term "fiduciary duty" in *Short* was dicta and, therefore, the term was excluded from all aspects of the trial, including expert testimony and jury instructions. *See Pecinovsky v. AMCO Ins. Co.,* 613 N.W.2d 804, 808 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000) (dicta not controlling). We disagree with the district court.

> Dicta are expressions in a court's opinion that go beyond the facts before the court and therefore are the individual view of the author of the opinion and not binding in subsequent cases.

*Id.* (quoting *K.R. v. Sanford,* 588 N.W.2d 545, 548 (Minn.App.1999), *aff'd,* 605 N.W.2d 387 (Minn.2000)). The statement in *Short* that an insurer has a fiduciary duty is more than mere dicta because (1) the issue of what duty is owed to an insured by an insurer was squarely before the court in *Short,* and (2) the supreme court clearly expressed its opinion. *Cf. Pecinovsky,* 613 N.W.2d at 808 (language in established case law was dicta where issue was not before, and had not been briefed to, the court). Therefore, we conclude, as stated in *Short,* that an insurer owes its insured a fiduciary duty to represent the insured's best interests.

Furthermore, the conclusion that an insurer owes its insured a fiduciary duty is supported by case law in other jurisdictions.

> The standard of conduct on the part of the insurer when dealing with claims arising under an insurance policy is shaped by, and must reflect, the quasi-fiduciary relationship that exists between the insurer and the insured by virtue of the insurance contract. Particularly when handling claims of third persons that are brought against the insured, an insurance company stands in a position similar to that of a fiduciary.

*Farmers Group, Inc. v. Trimble,* 691 P.2d 1138, 1141 (Colo.1984); *see also Haddick v. Valor Ins.,* 315 Ill.App.3d 752, 248 Ill.Dec. 812, 735 N.E.2d 132, 135 (2000) (citing *Cernocky v. Indemnity Ins. Co. of North Am.,* 69 Ill.App.2d 196, 216 N.E.2d 198 (1966) (insurer owes its insured a fiduciary duty)); *Overton v. Consolidated Ins. Co.,* 101 Wash.App. 651, 6 P.3d 1178, 1183 (2000) (same). The fiduciary duty arises because

> [i]n the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims.

*Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987).

■ Because case law establishes that an insurer owes its insured a fiduciary duty, the district court was required to make evidentiary rulings and select language for the jury instructions that reflected the fiduciary relationship between an insured and its insurer. *See Greenbush,* 463 N.W.2d at 306 n. 1 (requiring district courts to render decisions consistent with established case law). The jury had to know about the relationship between the insurer and the insured in order to properly understand the case. The trial court thus committed reversible error when it failed to recognize the law established in *Short. See Lindstrom v. Yellow Taxi Co.,* 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974) (citations omitted) (error in instructing jury warrants new trial if it " 'destroy[s] the substantial correctness of the charge as a whole,' cause[s] a miscar-

riage of justice, or result[s] in substantial prejudice."); *Cloverdale Foods of Minn., Inc. v. Pioneer Snacks,* 580 N.W.2d 46, 51–52 (Minn.App.1998) (reversing and remanding for new trial where evidentiary rulings were inconsistent with established law resulting in prejudicial error). Accordingly, we reverse and remand for a new trial.

### B. Good Faith

■■■■■ Appellants also argue that the district court erroneously instructed the jury on "good faith." A jury instruction "must be construed as a whole and tested from the standpoint of its total impact on the jury." *Lindstrom,* 298 Minn. at 229, 214 N.W.2d at 676.

■■■■■ The fiduciary duty owed by an insurer to its insured is measured by the standard of "good faith." *Short,* 334 N.W.2d at 387.

This duty to exercise "good faith" includes an obligation to view the situation as if there were no policy limits applicable to the claim, and to give equal consideration to the financial exposure of the insured.

*Id.* at 388. An insurer's duty of "good faith" is breached when the insured is clearly liable, as here, and when the insurer's refusal "to settle within the policy limits is not made in good faith and is not based upon reasonable grounds to believe that the amount demanded is excessive." *Id.*

■■■■ In its instruction to the jury on "good faith," the district court stated:

In order to carry out this duty, the insurer should: fully investigate a claim, fairly evaluate the claim against the insured, inform the insured of the consequences of a judgment that exceeds the limits of the policy, inform the insured of the potential conflict of interest of the insured and the insurer if the case has a settlement value in excess of the policy limits, and inform the insured of settlement offers, and other pertinent information of the claim to the insured.

A mere error in judgement by the insurer does not in and of itself constitute a breach of the duty of good faith. No one factor in and of itself is determinative of a breach. All factors taken together must lead you to believe that the insurance company breached its duty of good faith in order to answer question number 1 on the jury verdict form "yes."

Appellants argue that the court's instruction that "no one factor in and of itself is determinative of a breach," is an incorrect statement of law.

■■■ In cases where the insured is clearly liable, it has been established that any one factor in and of itself *may* be determinative of a breach of the duty of good faith. *See Short,* 334 N.W.2d at 389 (evidence of failure to communicate settlement offer to insured supports finding of bad faith by insurer); *see also Lange v. Fidelity & Cas. Co.,* 290 Minn. 61, 67–68, 185 N.W.2d 881, 885–86 (1971) (same); *Boerger v. American Gen. Ins. Co.,* 257 Minn. 72, 76–77, 100 N.W.2d 133, 136–37 (1959) (finding insurer breached duty of good faith where attorney for insurer failed to properly evaluate claim). Because case law has established that the failure of an insurer to perform any one factor *alone* may constitute a breach of the duty of good faith, the district court was required to instruct the jury as such. *See Kirsebom v. Connelly,* 486 N.W.2d 172, 175–76 (Minn.App.1992) (district court required to instruct jury on applicable law).

■■■ Here, however, the instruction given by the district court erroneously implied that the jury had to find that the insurer failed to perform more than one of its obligations before it could be found to have acted in bad faith. This implication destroyed the substantial correctness of the instruction. Accordingly, the district court committed substantial prejudicial error by failing to properly instruct the jury and a new trial is warranted.

## II.

■ In addition to the previously discussed evidentiary errors, appellants argue that the district court erred when it admitted the following into evidence: (1) expert testimony that attempted to impeach this court's ruling in *Kissoondath I;* (2) a videotape that attempted to impeach this court's ruling in *Kissoondath I;* and (3) testimony regarding the existence of, and the amount of, underinsured motorist (UIM) coverage available. As previously stated, a district court has broad discretion in making evidentiary rulings. *Kroning,* 567 N.W.2d at 45–46. "Entitlement to a new trial on the grounds of improper evidentiary rulings rests upon the complaining party's ability to demonstrate prejudicial error." *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990) (citation omitted).

### A. Expert Testimony

■ Appellants argue that the district court committed prejudicial error by permitting respondent's expert to testify that the evidence did not support the jury verdict in the underlying case when this court, in *Kissoondath I,* had affirmed the jury verdict.

> [W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.

*In re Welfare of M.D.O.,* 462 N.W.2d 370, 375 (Minn.1990) (quoting *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)). Therefore, when an appellate court has ruled on an issue, "the issue decided becomes the 'law of the case' and may not be relitigated * * * or re-examined * * *." *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.,* 503 N.W.2d 793, 795 (Minn.App.1993), *review denied* (Minn. Sept. 30, 1993) (citations omitted).

In an unpublished opinion, this court concluded that there was evidence reasonably tending to support the damage awards in the underlying case. *See Kis-*

*soondath I,* Nos. C0–95–1346, C7–95–128, 1995 WL 756840 at *5, —— N.W.2d ——. That is the law of this case and, therefore, the issue of whether the evidence supported the damages award may not be re-examined. *See Sylvester,* 503 N.W.2d at 795–96 ("conclusion that the triggering event was the release of contaminants" could not be re-examined because it had been previously decided upon in earlier appeal).

■ Respondent, however, called its expert, Peter Grottodden, to testify that "[t]he jury verdict is not supported by the evidence in the tax returns." In light of the fact that Grottodden's testimony contradicted this court's conclusion in *Kissoondath I,* the district court should have admitted into evidence this court's unpublished opinion and given a cautionary instruction. *Cf. Regents of Univ. of Minn. v. Medical, Inc.,* 382 N.W.2d 201, 208–09 (Minn.App.1986), *review denied* (Minn. Apr. 18, 1986) (upholding district court's decision to exclude court's opinion where expert's testimony consistent with decision reached in court's opinion). Without this evidence, the jury was left with the impression, as provided by Grottodden, that the evidence did not support the underlying verdict. Not only is Grottodden's opinion contrary to the law of this case, but the *opinion had nothing to do with the respondent's knowledge prior to the underlying personal injury trial and this was clearly known by the insurance company.* Because Grottodden's testimony was allowed to impeach this court's prior decision in the underlying personal injury cases, the district court committed reversible and prejudicial error.

### B. Edited Surveillance Video

■ For the same reasons that Grottodden's testimony re-examining the issue of the damages award in the underlying trial was prejudicial error, the admission of the edited surveillance tape, which challenged the underlying damages award,

constituted prejudicial error. Respondent clearly used the video to attempt to show that the evidence did not support the damages awarded in the underlying case. But, as previously stated, once an issue has been reviewed and decided upon by this court, the issue may not be re-examined in district court. *Sylvester*, 503 N.W.2d at 795. Because this court had already determined in *Kissoondath I* that the evidence supported the damages awarded in the underlying case, a videotape challenging that conclusion should not have been admitted into evidence. Moreover, there is no evidence to support the proposition that respondent was justified in relying on an edited version of the tape in evaluating appellants' claims. Therefore, we conclude that the admission of the videotape resulted in prejudice to appellants because it invited the jury to conclude, contrary to the holding of this court, that the evidence did not support the underlying verdict.

### C. UIM Evidence

■ Appellants argue that the district court erred and prejudiced them by permitting the introduction of evidence of appellants' UIM benefits, despite a pretrial motion in limine ruling excluding all reference to such benefits during trial. It has been established that where the existence of insurance is irrelevant to the issues being considered, the admission of evidence regarding the existence of insurance may serve as a basis for a new trial. *Jeddeloh v. Hockenhull*, 219 Minn. 541, 554, 18 N.W.2d 582, 589 (1945) (reversing and remanding for new trial where district court erroneously admitted evidence of insurance); *see also* Minn.R.Evid. 411 (proscribing reference to insurance where it is not related to issues before court).

Here, the district court, over strenuous objection, permitted respondent to question one of appellants' experts regarding the availability of UIM benefits. The following is only a portion of the testimony related to UIM benefits:

[RESPONDENT'S COUNSEL]: Did you review the file to confirm that indeed there was $500,000 in underinsured motorist coverage?

[APPELLANTS' EXPERT]: I don't know what the number was.

[RESPONDENT'S COUNSEL]: Mr. Nolan, if indeed the case has an actual value in excess of $350,000.00, does not the [appellant] benefit from taking the case to trial, collecting an excess verdict, and then having a binding judgment that would be enforceable against the underinsured motorist carrier?

[OBJECTION].

Respondent also referred to UIM benefits in closing arguments, stating:

Keep in mind in this case that the [appellants] * * * did have available to them underinsured motorist coverage, that is coverage that comes into play if there is an excess verdict, a verdict in excess of the available policy limits. But in this case, if they had gone to excess verdict, they would have had an airtight case against the underinsured motorist carrier to settle that claim.

However, appellants' UIM benefits played no role in respondent's investigation or evaluation in the underlying case, and there is no evidence in respondent's files or in the trial testimony in the previous trial to show otherwise. Therefore, appellants' UIM benefits were irrelevant and were properly excluded by a pretrial order. *See Jeddeloh*, 219 Minn. At 554, 18 N.W.2d at 589 (testimony regarding insurance to be irrelevant and prejudicial where it did not relate to issue before jury).

■ The district court gave a watered-down cautionary instruction concerning other coverage available to a party, but then it permitted respondent's counsel to continue the reference to UIM coverage by cross-examination and final argument. As a result, the introduction of the UIM evidence inescapably influenced the jury to believe that appellants could pursue UIM benefits, and thus, would be adequately

compensated. This evidence unquestionably prejudiced appellants. *See id.* (finding testimony related to insurance prejudicial because jury was led to believe that injured party would be adequately compensated by insurance proceeds). Accordingly, allowing respondent to present evidence on the availability and amounts of appellants' UIM benefits was clear error by the district court compelling a new trial.

### III.

 Appellants further argue that the district court committed reversible error by failing to grant a new trial on the basis that the evidence did not justify the verdict. A new trial may be granted on the ground that the evidence does not justify the verdict. Minn.R.Civ.P. 59.01(g) (2000); *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn.1984). The evidence must be viewed in "the light most favorable to the verdict," and must be viewed as a whole. *Hauenstein*, 347 N.W.2d at 275.

Here, the evidence, even when viewed in a light most favorable to the verdict, does not support the jury's special verdict that respondent did not breach its duty of good faith by failing to settle appellants' claims within the policy limits of insured. The record demonstrates that respondent failed to materially inform and continually communicate with insured regarding the settlement offer and the likelihood of an excess verdict. Respondent's counsel only advised insured of a "theoretical risk" of an excess verdict, when in fact he was obligated to advise insured, in detail, as to the implications of an excess verdict. *See Lange*, 290 Minn. at 68, 185 N.W.2d at 886 (Minn.1971). In *Lange*, the supreme court stated:

> This obligation of counsel retained by the insurer is not fulfilled merely by an explanation which amounts to no more than assurances to the insured that his interests are being zealously and faithfully protected by experienced counsel,

but rather by laying bare the truth—not only of the potential consequences of a deficiency judgment but of the potential conflict between the interests of the carrier and the insured—in the manner in which the insured would be advised if he consulted private counsel.

*Id.* Because respondent did not inform its insured of (1) the estimated dollar amount that the insured would be exposed to in the event of an excess judgment, and (2) the likelihood of an excess judgment, respondent did not proceed in good faith. *See id.* (finding lack of good faith by insurer where insurer did not inform its insured that he would be exposed to an excess judgment of $4,000). Accordingly, the district court committed reversible error and a new trial is warranted.

### DECISION

In denying appellants' motion for a new trial, the district court erred in (1) failing to instruct the jury on "fiduciary duty," and implying that an insurer must fail to perform more than one of its obligations to its insured to be found to have acted in bad faith; (2) allowing evidence that attempted to impeach this court's prior decision in *Kissoondath I;* (3) allowing evidence of appellants' UIM benefits to be presented and argued to the jury; and (4) finding that there was substantial evidence to support the verdict. The errors were prejudicial; therefore, a new trial is required.

**Reversed and remanded.**