**Christa SMITS, et al., Appellants,**

v.

**E–Z POR CORPORATION, et al.,
Respondents.**

**No. C3–84–1393.**

Court of Appeals of Minnesota.

April 9, 1985.

David A. Orenstein, Minneapolis, for appellants.

James D. O'Connor, Minneapolis, for respondents.

Heard, considered and decided by HUS-PENI, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

FOLEY, Judge.

Christa and George Smits appeal from a judgment dismissing their products liability complaint. The case was tried to a jury which rendered a special verdict finding Christa Smits was 100% at fault.

## FACTS

In April 1981 Christa Smits (appellant) purchased two E–Z Por aluminum roasting pans for $1.69 apiece. She roasted a 10 pound turkey in one pan and an 11 pound

turkey in the other. Both pans were sold with identical labels that said in large print that the pans would hold up to 15 pounds. The label also stated in smaller but bold-face print "IMPORTANT: WHEN RE-MOVING ROASTER FROM OVEN, MAKE CERTAIN BOTTOM IS SUP-PORTED." The cautionary language is light green on a dark background. Appellant did not read the warning.

She prepared both turkeys for roasting, putting a cup of water in each pan and covered the turkey with an aluminum foil tent. She sealed the long sides of the pan with aluminum foil and left the short ends unsealed. She cooked one turkey in her upper oven and one in her lower oven. The rack in the upper oven is at her chin level. She had to raise the pan above her head to put the turkey in the oven.

After the turkeys cooked for three hours, appellant removed both turkeys from the ovens. Appellant decided one turkey needed to cook more. After approximately two minutes she replaced one pan in the upper oven.

When appellant put the pan in the upper oven, hot liquid from the turkey pan spilled on her left arm and breast causing second and third degree burns. Appellant could not remember whether the pan buckled immediately before the accident. She just remembered the liquid coming down on her.

At trial respondent established that while aluminum loses its strength at elevated temperatures, it regains its full strength within 90 seconds after being removed from the oven.

### ISSUES

1. Did the trial court err in its jury instructions regarding strict liability and duty to warn about the product?

2. Did the trial court err in its instruction regarding express warranty?

### ANALYSIS

*Jury Instructions:*

■ Jury instructions must be construed as a whole and tested from the standpoint of total impact on the jury. *Lindstrom v. Yellow Taxi Co.*, 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974). Errors are fundamental or controlling if they "destroy the substantial correctness of the charge as a whole," cause a miscarriage of justice or result in substantial prejudice. *Id.* The granting of a motion for a new trial on the ground of erroneous instructions to the jury rests largely in the sound discretion of the court, and its decision will not be disturbed on appeal unless there has been a clear abuse of that discretion. *Id.* at 230, 214 N.W.2d at 677. In the absence of an objection, an error in the instruction may be assigned as a ground for a new trial only if the error is one of "fundamental law or controlling principle." *Wadena v. Bush*, 305 Minn. 134, 151, 232 N.W.2d 753, 763 (1975).

1. Appellants asserted theories of strict liability and express warranty. Appellants claim that the trial court erred in failing to instruct the jury of the respondent's duty to warn as to reasonably foreseeable misuse of the product. In particular, they claim the trial court should have used JIG II 405. *See Parks v. Allis-Chalmers Corp.*, 289 N.W.2d 456 (Minn.1979).

Reviewing the court's instructions, it is clear that, as a whole, they adequately state the law as to strict liability and the duty to warn doctrine.

The Minnesota Supreme Court has held there are three necessary elements of strict tort liability: (1) that the product in question is in a defective condition (unreasonably dangerous); (2) that the defective condition existed at the time the product left the control of the seller (manufacturer); (3) that the defective condition was a cause of the plaintiff's injury. *See* Steenson, *The Anatomy of Products Liability in Minnesota: The Theories of Recovery*, 6 William Mitchell Law Review 1, 57 (1980); *see also Bilotta v. Kelley Co., Inc.*, 346 N.W.2d 616, 623, note 3 (Minn.1984). The court's instruction embodies these three essentials; in fact, it closely follows JIG II 118, on strict liability.

In *Bilotta* the court held that an additional instruction is necessary in a design defect case and suggested an instruction taken from *Holm v. Sponco*, 324 N.W.2d 207, 212 (Minn.1982):

A manufacturer is obligated to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended, as well as an unintended yet reasonably foreseeable use.

What constitutes "reasonable care" will, of course, vary with the surrounding circumstances and will involve "a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm."

*Bilotta*, 346 N.W.2d at 621.

The trial court's instructions contained an instruction similar to this.

■ Appellants argue the court erroneously instructed the jury that appellants had to prove the product was defective *and* unreasonably dangerous. However, the argument misstates the court's instruction. In context, the court's instruction is adequate:

Plaintiffs claim that the aluminum roasting pan in this case was defective and unreasonably dangerous, and that defendants breached an express warranty.

A seller who sells a product in a defective condition unreasonably dangerous to the user or consumer is liable to a user or consumer for any injury directly caused by the defective condition...

This is correct and does not impose an improper burden upon plaintiff.

Appellant also argues that the court's instruction omitted the specific duty of the manufacturer to warn or instruct as to dangers inherent in any reasonably foreseeable improper manner of use. *Parks v. Allis-Chalmers Corp.*, 289 N.W.2d 456 (Minn.1980). This case differs substantially from *Parks* in that necessary detailed instructions about unclogging the machine were not given the plaintiff. Here, the warning on the face of the package is adequate, given that the danger is obvious and prevention requires no detailed instruction.

■ The Minnesota Supreme Court held that a manufacturer's duty to warn in strict liability cases extends to all reasonably foreseeable users. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272 (Minn.1984). The trial court's instruction stated, "A product manufacturer or seller must provide adequate warnings and instructions for the safe use of the product." It also stated, "A manufacturer has a duty to use reasonable care to design a product that does not create unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is put to its intended use or to any unintended yet reasonably foreseeable use." This is certainly adequate.

■ Appellants cannot complain about the failure of the trial court to give JIG II 405G since they did not ask for this instruction. In fact, appellants tacitly approved all jury instructions by not objecting to them before the jury deliberated. *See Erickson v. Sorenson*, 297 Minn. 452, 211 N.W.2d 883 (Minn.1973).

■ 2. Appellants also claim that the trial court should have directed a verdict, sua sponte, on the express warranty issue. Appellants never made such a motion and the trial court's instructions on the issue properly conformed to the law. *See* Minn.Stat. § 336.2–313 (1982). There was no error.

## DECISION

The trial court properly instructed the jury on strict liability, duty to warn about the product and express warranty.

Affirmed.