Helen ROWE, Appellant,

v.

Ruth K. GOLDBERG, Respondent.

No. CX–88–1156.

Court of Appeals of Minnesota.

Feb. 14, 1989.

Review Denied April 24, 1989.

Michael W. Unger, Hvass, Weisman & King, Chtd., Minneapolis, for appellant.

William K. Strifert, Taylor Law Firm, P.A., Minneapolis, for respondent.

Heard, considered and decided by RANDALL, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

This is an appeal from the denial of a motion for a new trial based on claims of evidentiary errors, the limiting of the scope of expert testimony, and the failure of the trial court to give a requested jury instruction. We affirm.

## FACTS

Appellant Helen Rowe was employed by respondent Ruth K. Goldberg as a housekeeper. Rowe cleaned Goldberg's home two times each month for eighteen months. On June 7, 1979, as she was leaving for the day, Rowe fell on the stairs at Goldberg's home. At the time of the fall, Rowe was carrying her cleaning supplies and her purse. She was blind in her left eye. Rowe testified that as she was leaving, she was distracted by Goldberg who had offered to help her. Goldberg testified that Rowe told her that she was in a hurry, that she could handle carrying the supplies herself, and that she was concerned that she would be late to pick up her husband. Rowe claims that as she stepped down the stairs, she sensed someone near. She felt this distraction disturbed her concentration, caused her to turn, lose her balance, and fall.

At trial, the jury found by special verdict that Rowe was 90% negligent, that Goldberg was 10% negligent, and total damage in the amount of $107,772. Rowe moved for a new trial alleging that the trial court had erred in excluding expert testimony, admitting evidence of a prior fall, admitting evidence of dizziness and lightheadedness, and failing to give requested instructions.

## ISSUES

1. Did the trial court err in admitting evidence of a prior fall, and medical testimony relating to Rowe's complaints of lightheadedness?

2. Did the trial court err in limiting the scope of expert testimony?

3. Did the trial court err in refusing to give a requested jury instruction?

## ANALYSIS

■ 1. Evidentiary rulings are within the discretion of the trial court, and will not be reversed unless there has been a clear abuse of discretion. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn. 1983). Rowe argues that the trial court erred in allowing testimony concerning a prior fall, and complaints of lightheadedness. We find no abuse of discretion on either count.

Rowe had a previous fall in 1977. The court overruled a relevancy objection made by appellant regarding the admission of a medical record pertaining to this fall. The medical record revealed that Rowe's left ankle was swollen and tender at the time of examination. Rowe was given an ace bandage, and sent home. Rowe testified that she was able to return to work the next day.

We conclude that if the trial court erred, it was harmless error. Clearly, the jury could appreciate that the ankle injury did not affect the injury which she suffered to her left hip in 1979.

■ A video deposition containing the testimony of appellant's doctor, Dr. Leslie, was introduced at trial. Prior to admission, the trial court had reviewed the video in chambers, and overruled Rowe's objection to testimony regarding lightheadedness.

Dr. Leslie was questioned during direct examination about the care and treatment of Rowe from 1977 through 1986. He was taken through the same chronology on cross examination, and testified about several medical examinations of Rowe by other doctors. Dr. Leslie testified on cross examination that on June 4, 1982, Rowe was seen by Dr. Phillip Price, and at that visit she reported that she sometimes felt lightheaded, and that on May 24, 1982, she had tripped and fallen striking her sternum. Dr. Leslie next testified that on July 18, 1985, Dr. Gmitro examined Rowe, and on that date she reported that she experienced some kind of flashing light sensation, extreme lightheadedness, and had fall-

en on one occasion. Dr. Leslie examined Rowe on September 30, 1985, and testified that on that date, she reported another falldown incident due to lightheadedness.

On re-direct examination, Rowe's attorney asked Dr. Leslie to explain the cause of Rowe's lightheadedness, and he explained that this was a side effect of high blood pressure medication (Minipress) which she had been taking. We cannot conclude that there was an abuse of discretion in the admittance of the evidence of lightheadedness.

The evidence of Rowe's own negligence was substantial. She testified to the following: her continuous familiarity with the stairs over eighteen months, that she knew the stairs were dangerous, that she was distracted as she was leaving, that she was in a hurry to pick up her husband, and that she was carrying a vacuum and other bulky items. The admission of the prior fall, and testimony regarding lightheadedness was, if error, harmless, and we cannot conclude that the admission of this evidence played a substantial part in influencing the jury to apportion the negligence as they did. *See State v. Billington,* 241 Minn. 418, 427, 63 N.W.2d 387, 392–93 (1954) *see also* Minn.R.Evid. 103(a). Here, the evidence amply supports the jury's findings.

2. Next, Rowe argues that the trial court erred in limiting the testimony of an expert. The trial court has broad discretion in deciding whether testimony from a qualified expert should be received. *Sorensen v. Maski,* 361 N.W.2d 498, 500 (Minn. Ct.App.1985). Further, the Minnesota Supreme Court in *State v. Helterbridle,* 301 N.W.2d 545, 547 (Minn.1980) stated:

> If the subject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject which is within their experience, then the testimony does not meet the helpfulness test.

Here, the expert was allowed to show the jury photographs of the steps with measurements, and also play a video tape of the steps while he walked up and down the steps. He further testified regarding what changes could be made to modify the pattern of ingress and egress.

Rowe argues that the trial court erred in refusing to allow the expert to testify that based on the Uniform Building Code and the Life Safety Code that existed *at the time of the accident,* the steps did not conform to minimum industry standards, and that therefore, the steps were unsafe and hazardous. The trial court limited the testimony of the expert for the following reasons:

> One of the reasons, in reference to the code situation, is that although they had been in effect at the time of the accident, there's no showing that they were at the time the staircase was constructed or that the owner of the premises could be compelled to change or reconstruct or, if you want to say, "repair" that particular situation on the basis of enforcement of the code itself. Apparently the building was grandfathered, so-to-speak. * * * And one of the reasons for the Court's ruling, too, is the fact that the photograph of the actual scene of the accident, the stairway, is such as to clearly indicate the situation * * *. He can testify within limitations set out by the Court.

In so ruling, the trial court did not abuse its discretion. Rowe made no showing that the stairs should have complied with the codes.

The jurors were capable of considering the evidence and determining whether the steps were dangerous or hazardous without reference to either code.

3. Finally, Rowe argues that the trial court erred in refusing to give a requested jury instruction. Rowe claims the trial court should have given an instruction which stated "that Goldberg had a duty to correct." The trial court gave JIG 330 which is the recommended jury instruction and which reads as follows:

> A possessor of land has a duty to use reasonable care to inspect and repair his premises and warn an entrant who comes upon his premises to protect the entrant

from an unreasonable risk of harm caused by the condition of the premises while he is on the premises.

In determining reasonable care of the landowner, the following factors may be considered: The purpose for which the entrant entered the premises; the circumstances under which the entrant entered the premises; the use to which the premises is put or expected to be put; the foreseeability or possibility of harm; the reasonableness of the inspection, repair or warning; the opportunity and ease of repair or *correction* or the giving of the warning.

(Emphasis added). Rowe's requested instruction would have added the words "duty to correct."

Jury instructions must be construed as a whole and tested from the standpoint of total impact on the jury. Errors are fundamental or controlling if they "destroy the substantial correctness of the charge as a whole," cause a miscarriage of justice or result in substantial prejudice. The granting of a motion for a new trial on the ground of erroneous instructions to the jury rests largely in the sound discretion of the court, and its decision will not be disturbed on appeal unless there has been a clear abuse of that discretion. In the absence of an objection, an error in the instruction may be assigned as ground for a new trial only if the error is one of "fundamental law or controlling principle."

*Smits v. E–Z Por Corp.*, 365 N.W.2d 352, 354 (Minn.Ct.App.1985) (citations omitted). Rowe argues that to instruct on "repair" is misleading in this case because of her contention that the stairs in question were dangerous from the inception and therefore to remedy the situation it would be more proper to "correct" the defective condition rather than "repair" it.

We find that JIG 330 adequately conveys the substance of Rowe's requested instruction. It is not grounds for a new trial if a trial court's instruction contains a complete and correct statement of the law, even if the requested instruction accurately states

the law. *Gleeman v. Triplett*, 301 Minn. 504, 506–07, 222 N.W.2d 787, 788 (1974).

## DECISION

AFFIRMED.

FOLEY, J., dissents.

FOLEY, Judge (dissenting).

I respectfully dissent. It is my considered judgment that the verdict on liability in this case was tainted by the receipt of prejudicial evidence. The Minnesota Rules of Evidence provide that "evidence which is not relevant is not admissible." Minn.R. Evid. 402. The definition of relevancy followed in Minnesota states: " 'Relevancy in logic is the tendency of evidence to establish a proposition which it is offered to prove.' " *Boland v. Morrill*, 270 Minn. 86, 98, 132 N.W.2d 711, 719 (1965) (quoting McCormick, *Evidence*, § 152).

The key phrase in the definition of relevancy is evidence that *logically* tends to prove a proposition. Applying that definition to this case, certain evidence that was admitted here did not logically tend to establish a proposition which it was offered to prove and was highly prejudicial.

The record reflects that while Rowe was injured in a fall in 1979 at the Goldberg home, the trial court received into evidence reference to a fall by Rowe in 1977 as well as a medical record with a notation of that fall. Objection to this evidence was preserved, and there was no effort made by Goldberg to connect the 1977 fall in any manner to the 1979 fall. The trial court permitted the evidence of the prior fall because it thought there might be a possibility of aggravation to the left hip as a result of the left ankle injury in 1977. No connection was ever made between the two.

Even if it could be soundly argued that reference to the 1977 fall was not a sufficient error to reverse the apportionment of liability by the jury, that error together with the receipt in evidence of *other* irrelevant evidence from medical examinations in 1982 and 1985 concerning Rowe's complaints of lightheadedness, was so preju-

dicial as to compel reversal. The ruling by which the trial court received the medical evidence was done before trial while reviewing the video deposition of Dr. Leslie, and the objections were preserved. Although the trial court file contains an affidavit of Dr. Leslie in connection with Rowe's 1979 fall, the record does not reflect whether this affidavit was used in connection with the post-trial motion, or merely placed in the file.

Rowe's counsel attempted to impeach Goldberg by making reference to her deposition and commented about the testimony she gave regarding Rowe's lightheadedness, but at trial where use was made of that topic, medical evidence had already been introduced on that subject. Further, Goldberg's adverse testimony was elicited through cross-examination and therefore was not binding on Rowe.

It is significant that two doctors testified, one for each party. Neither was asked to tie in the evidence of the 1977 fall or the medical evidence relating to the lightheadedness in 1982 and 1985 with the 1979 fall.

The evidence regarding the 1977 fall permitted the jury to speculate as to the reasons for the 1979 fall. There was no similarity or connection proven, and the injury which Rowe suffered in 1979 was different from the 1977 injury. The 1977 fall did not occur at the Goldberg home, and we know nothing of the circumstances surrounding that fall. The jury was permitted to fill in the gaps, however erroneous their conclusion might be. The same is true of the 1982 and 1985 medical evidence, neither of which complaints was logically tied to the 1979 fall.

When invoking the test of relevancy, even under the liberal view that is followed in Minnesota with respect to receiving evidence, the inescapable conclusion here is that the medical evidence of 1982 and 1985 and the evidence of the 1977 fall did not logically tend to prove a material fact in issue. This evidence is speculative, irrelevant, and has no connection to this case.

It is my view that the issues here cannot be resolved by applying the harmless error rule. While justice does not require a trial free of errors, it does demand a trial without errors which are prejudicial to the result. *See State v. White*, 295 Minn. 217, 225, 203 N.W.2d 852, 858 (1973). I believe that Rowe's right to a fair trial was consistently compromised by the irrelevancy and error discussed in this dissent, and I conclude that Rowe was prejudiced by the cumulative effect of error in this case. *See People v. Harbold*, 124 Ill.App.3d 363, 79 Ill.Dec. 830, 464 N.E.2d 734 (1984). For this reason, and in the interest of justice, a new trial must be ordered. *State v. Underwood*, 281 N.W.2d 337 (Minn.1979).

The evidentiary rulings stressed here so tainted the jury's apportionment of liability that it cannot stand. Since there was no challenge made regarding damages, this case should be remanded on liability alone.