**STATE of Minnesota, Respondent,**

v.

**Kristen Rae MANYPENNY, Appellant.**

**No. CX–02–855.**

Court of Appeals of Minnesota.

June 3, 2003.

Becker County District Court, File No. K901534.

Bradford Colbert, Assistant Public Defender, St. Paul, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Joseph Evans, Becker County Attorney, James W. Donehower, Assistant Becker County Attorney, Detroit Lakes, MN, for respondent.

Considered and decided by ANDERSON, Presiding Judge, SCHUMACHER, Judge, and WILLIS, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant challenges her conviction of fourth-degree assault of a tribal peace officer on White Earth tribal land. She claims that because the officer did not have the authority to effectuate a valid arrest of a tribal member on the White Earth reservation, the evidence was insufficient to sustain her conviction for assaulting an officer. Because we conclude that the tribal officer had the authority to make a lawful arrest, we affirm appellant's conviction.

## FACTS

On April 29, 2001, White Earth Tribal Officer Chris Benson was dispatched to investigate a disturbance outside the residence of Linda Bevins. When he arrived, Benson observed appellant Kristen Rae Manypenny screaming at individuals inside the house. Benson asked appellant to leave the premises, but she refused to do so. Appellant continued to yell at people inside the Bevins residence and Benson warned her that if she refused to leave, she would be arrested for disorderly conduct and trespassing.

Because appellant refused to leave, Benson attempted to place her under arrest. Appellant resisted; she pulled her hands from Benson and tried to move away as he attempted to place handcuffs on her. After Benson successfully placed the handcuffs on appellant, he asked her to get into his squad car; she again refused. As Benson attempted to physically place appellant in the squad car, she kicked Benson in the chest, knocking off his portable radio. She also kicked Benson in the arms and in the mouth, causing Benson to sustain a cut to the inside of his lip. Benson also suffered a cut to his hand as a result of appellant's physical resistance. Once appellant was in the squad car headed to the Becker County jail, she attempted to kick out the car's back window and was verbally abusive to Benson.

Respondent State of Minnesota charged appellant with assault in the fourth degree, Minn.Stat. § 609.2231, subd. 1 (2000); obstructing the legal process, Minn.Stat. § 609.50, subds. 1(2), 2(2) (2000); and disorderly conduct, Minn.Stat. § 609.72, subd. 1(1) (2000). The district court denied appellant's motion to dismiss all charges based on lack of subject-matter jurisdiction.

After the parties agreed to a trial based on stipulated facts pursuant to *State v. Lothenbach*, 296 N.W.2d 854 (Minn.1980), the district court found appellant guilty of all three charged offenses. The district court subsequently sentenced appellant to 180 days in jail, staying all but 30 of those days. This appeal followed. The district court stayed execution of the sentence pending this appeal.

## ISSUES

I. Did the White Earth tribal police officer have jurisdictional authority to effect a lawful arrest for fourth-degree assault?

II. Does the conferral of concurrent jurisdiction on tribal police officers under Minn.Stat. § 626.93 (2000) violate either the United States or Minnesota constitutions?

## ANALYSIS

 Appellant argues that White Earth Tribal Officer Chris Benson did not effect a lawful arrest when he appre-

hended appellant, and because the statute at issue requires a lawful arrest as an element of the charge, she cannot be convicted of fourth-degree assault on a peace officer. Appellant raises a sufficiency-of-the-evidence issue; essentially she is arguing that the state has failed to prove an element of Minn.Stat. § 609.2231, subd. 1 (2000)—specifically, that Benson was "effecting a lawful arrest." "To sustain a conviction, the state must prove all essential elements of the charged crime beyond a reasonable doubt." *State v. Papadakis,* 643 N.W.2d 349, 354 (Minn.App.2002). Determination of "the evidence required for a conviction" under a specific statute "is an issue of statutory interpretation, a matter of law" subject to de novo review. *State v. Tomlin,* 622 N.W.2d 546, 548 (Minn.2001) (citation omitted).

I

An individual who physically assaults a peace officer licensed under Minn.Stat. § 626.845, subd. 1 (2000), when that officer is making a lawful arrest or executing any other duty imposed by law, is guilty of fourth-degree assault. Minn.Stat. § 609.2231, subd. 1 (2000). The parties do not dispute that Benson, as a tribal police officer, is an appropriately licensed peace officer under Minn.Stat. § 626.845, subd. 1. It is also uncontroverted that if Benson had the authority to arrest appellant, her physical assault of Benson is sufficient to support a conviction of fourth-degree assault. The issue at hand is whether Benson, as a White Earth tribal officer, had the jurisdictional authority to arrest appellant within the boundaries of the White Earth reservation.

Appellant argues that federal law prohibits the arrest upon which her conviction is based. She maintains that the federal government has not granted Minnesota the right to enter into cooperative agreements with tribes to enforce criminal statutes on reservations. Appellant contends that because jurisdiction over criminal matters resides exclusively with the State of Minnesota, a tribal peace officer could not legally arrest her and thus her conviction must be reversed.

Originally, the federal government and the separate Indian tribes had direct jurisdiction over reservations. *See U.S. v. Wheeler,* 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978) (stating that Indian sovereignty "exists only at the sufferance of Congress and is subject to complete defeasance"). The right of Indians to be free from a state's "regulation of their conduct in Indian country unless Congress provides otherwise derives from the Indian-sovereignty doctrine enunciated in *Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832)." *Latender v. Israel,* 584 F.2d 817, 821 n. 5 (7th Cir. 1978).

In 1953, Congress adopted Public Law 280, which provided Minnesota with

> jurisdiction over offenses committed by or against Indians in the areas of Indian country * * * to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory.

Pub.L. No. 83–280, 67 Stat. 588–89 (1953) (codified as amended at 18 U.S.C. § 1162(a) (2000)). Congress addressed three issues in Public Law 280: lawlessness on reservations, the desire to assimilate Indian tribes into the population, and a shrinking federal budget for Indian affairs. *Washington v. Confederated Bands & Tribes of the Yakima Indian Nation,* 439 U.S. 463, 488, 99 S.Ct. 740, 755, 58 L.Ed.2d 740 (1979); *see also Bryan v.*

*Itasca County,* 426 U.S. 373, 379, 96 S.Ct. 2102, 2106, 48 L.Ed.2d 710 (1976) (stating that the purpose of this grant of jurisdiction was to combat the problem of lawlessness on reservations and the lack of adequate tribal law enforcement).

■ Public Law 280 gave certain states, including Minnesota, jurisdiction over crimes committed by or against Indians in Indian country within the state, with specified exceptions in some of the named states. 18 U.S.C. § 1162(a). For example, the Red Lake reservation is not included in the grant of jurisdiction to Minnesota. *Id.* The effect of Public Law 280 is to require the state to enforce state criminal laws within reservation boundaries. *State v. Stone,* 572 N.W.2d 725, 729 (Minn.1997).

■ In 1968, Public Law 280 was amended to allow state governments to retrocede its jurisdiction over a tribe to the federal government. Pub.L. No. 90–284, 82 Stat. 78 (1968) (codified as amended at 25 U.S.C. § 1323); *see also* Exec. Order No. 11435, 33 Fed.Reg. 17339 (Nov. 21, 1968) (designating the Secretary of the Interior to accept retrocessions). "[R]etrocession" is a "state's return to the federal government of jurisdiction over criminal and/or civil matters previously granted to the state by Congress." *U.S. v. Merrick,* 767 F.Supp. 1022, 1023 (D.Neb.1991).

Minnesota has not retroceded its authority over the White Earth reservation to the federal government. But the state has entered into "cooperative agreements" with some tribal authorities, including those authorities governing the White Earth reservation, to "regulate the provi-

sion of law enforcement services." Minn. Stat. § 626.93, subd. 4 (2002). Under these agreements, a tribe has concurrent jurisdictional authority with the local county sheriff to enforce state criminal law within the geographical boundaries of the tribe's reservation. Minn.Stat. § 626.93, subd. 3; *see also* Minn.Stat. §§ 626.90.91, .93 (2002) (authorizing the Mille Lacs Band of Chippewa Indians, the Lower Sioux Indian Community, and the Fond du Lac Band of Lake Superior Chippewa to establish law enforcement authorities).

■ Appellant argues that retrocession is the only lawful process for Minnesota to give up its jurisdiction over certain affairs on tribal land, and because the state has never retroceded its jurisdiction over criminal matters to the federal government,[1] only the State of Minnesota is authorized to enforce the state's criminal laws on tribal lands. Appellant contends that retrocession is the only way to place criminal jurisdiction in the hands of the tribe and that the cooperative agreement that Minnesota entered into with the White Earth tribe violates federal law.

Whether a cooperative agreement authorizing tribal officers to lawfully arrest Indians on a reservation is permissible is an issue of first impression in this state. The scant case-law treatment addressing the issue of cooperative agreements appears only in dicta. In *Stone,* the supreme court dealt with various motor-vehicle violations and the question of whether the state had jurisdiction to enforce motor-vehicle statutes against tribal members for conduct occurring within the boundaries of the reservation. 572 N.W.2d at 727. After con-

---

1. While appellant is correct that the criminal jurisdiction over the White Earth reservation has not been retroceded, her assertion that Minnesota has *never* retroceded jurisdiction is incorrect. In 1973, the state retroceded all criminal jurisdiction for the Bois Forte Indian

Reservation at Nett Lake to the federal government under authority of 25 U.S.C. § 1323. Act of May 23, 1973, ch. 625, 1973 Minn. Laws 1500; *State v. Stone,* 572 N.W.2d 725, 728 n. 3 (1997).

cluding that the state lacked jurisdiction to enforce civil and regulatory statutes and that no extraordinary circumstances existed to justify such action, the supreme court addressed cooperative agreements by observing,

> [w]e anticipate that tribes without the resources to sustain their own enforcement systems will enter into cooperative agreements with state and local governments to obtain these services.

*Id.* at 732. The court recognized that this expectation was likely well founded because of the existence of police-and fire-protection agreements with governmental units such as the agreement between the City of Prior Lake and the Shakopee Indian Community. *Id.*

■ What appellant sets up for this court is a false dichotomy. Public Law 280 does not prohibit cooperative agreements. It does not require states to consent to retrocession requests from tribal governments. Nor does it prohibit tribes and state governments from entering into mutually beneficial agreements to provide law-enforcement services that are well short of the retrocession standard. In short, although appellant argues otherwise, law enforcement on Indian reservations is not an either-or proposition.

■ Minnesota need not retrocede its jurisdiction in order to enter cooperative agreements with Indian tribes. Because numerous benefits flow to both the tribes and the state from entering into such agreements, they are not viewed as a "forcible imposition of state laws on Indian tribes." Gwyn Goodson Timms, *Cooperative Agreements: Government-to-Government Relations to Foster Reservation Business Development*, 20 Pepp. L.Rev. 1295, 1314 (1993). Benefits include (1) limiting litigation over jurisdiction to allow parties to focus on substantive issues, (2) enabling states and tribes to reach com-

promises between competing interests, (3) allowing each side to share resources and limit expenses by reducing administrative and service costs, (4) encouraging economic development on Indian reservations by more clearly defining applicable laws, and (5) filling regulatory gaps where jurisdictional authority is unclear. *Id.* at 1305–09. Instead of being an imposition on tribal governments, cooperative agreements permit the tribes to acquiesce to a form of state authority. *Id.* at 1314.

■ The existing legal authorities indicate that the cooperative agreement between the White Earth tribe and the state does not violate federal law. *Stone*, 572 N.W.2d at 732; *Timms, supra*, at 1314. Because we agree with these authorities, the state's involvement in a cooperative agreement with the White Earth reservation was not a violation of federal law and thus Benson had the authority to lawfully arrest appellant.

The state argues that Congress has specifically authorized cooperative agreements under 42 U.S.C. § 3796dd(a). But because we conclude that Minnesota need not first retrocede its jurisdiction to enter cooperative agreements with tribes, we need not address this argument.

## II

■ Appellant's pro se brief raises additional constitutional issues regarding her arrest for fourth-degree assault. First, she alleges that the state's cooperative agreement with the White Earth tribal police, which provides each with concurrent jurisdiction over criminal affairs on the reservation, is unconstitutional under both the United States and Minnesota constitutions.

■ Reviewing the constitutionality of a statute is a question of law that we review de novo. *Hamilton v. Comm'r of*

*Pub. Safety,* 600 N.W.2d 720, 722 (Minn. 1999). "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989) (citation omitted). "The party challenging a statute has the burden of demonstrating beyond a reasonable doubt a violation of some provision of the Minnesota Constitution." *Haggerty,* 448 N.W.2d at 364 (citation omitted); *see also Miller Brewing Co. v. State,* 284 N.W.2d 353, 356 (Minn.1979) (recognizing that a person challenging the constitutionality of a statute must overcome every presumption in favor of constitutionality).

The pro se brief fails to explain appellant's assertion that this statute violates either the Minnesota or United States constitutions. Moreover, appellant interjects arguments relating to the White Earth Reservation Business Committee, the Tribal Executive Committee, and Resolutions 1–80 and 2–80 without explaining their significance to the present facts. We conclude that appellant has not sustained the burden of demonstrating beyond a reasonable doubt that Minn.Stat. § 626.93 is unconstitutional.

 Appellant next argues that the tribe's constitution precludes the establishment of a tribal police force. Appellant apparently maintains that the tribe's creation of a law enforcement agency was an *ultra vires* act, done without the tribal members' consent through a tribal constitutional amendment or a constitutional convention.

But appellant fails to explain why Minnesota state courts should intervene in a matter of internal tribal governance. In the absence of any developed and articulated argument with cited authority supporting appellant's argument, we decline to address appellant's claim of an *ultra vires* act by the tribal government. *See Bryan,* 426 U.S. at 388, 96 S.Ct. at 2110–11 (observing that the purpose of Public Law 280 was not to permit states to regulate the internal governance of tribes).

## DECISION

Because the cooperative agreement between the White Earth tribe and the State of Minnesota was not invalid, tribal peace officer Chris Benson was authorized to arrest appellant, and thus appellant's conviction of fourth-degree assault on a peace officer was supported by sufficient evidence. Because we find no merit to the remainder of appellant's various arguments as to the impropriety of her arrest, we affirm appellant's conviction.[2]

**Affirmed.**

2. Because we conclude the cooperative agreement between the tribe and the State of Minnesota is not invalid for the purposes of the criminal prosecution at issue here, it is not necessary to reach the state's argument that a tribal peace officer has the inherent authority to arrest appellant. The state concedes there is no controlling authority in Minnesota for this proposition but cites the United States Supreme Court decision of *Duro v. Reina,* 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990), as supporting this argument. *Duro* held that an Indian tribe does not have criminal jurisdiction over Indians who are not members of that tribe. *Id.* at 688, 110 S.Ct. at 2061. But *Duro,* which permits the detention of offenders outside of tribal lands, is wholly silent on the critical question of authority to *arrest. Id.* at 697, 110 S.Ct. at 2065–66 (holding that tribal law-enforcement authorities have the power to restrain and, if the circumstances dictate, eject

those who disturb the public order on reservations). In light of the result here and the lack of authority for the state's argument on this point, we decline to address the issue.