STATE of Minnesota, Respondent,

v.

Franklin William LaROSE, Appellant.

Nos. C5–03–93, C9–03–95.

Court of Appeals of Minnesota.

Dec. 16, 2003.

Review Granted Feb. 25, 2004.

Mike Hatch, Attorney General, William A. Szotkowski, Assistant Attorney General, Paul, MN, and Earl E. Maus, Cass County Attorney, Walker, MN, for respondent.

John M. Stuart, Minnesota Public Defender, Steven P. Russett, Assistant State Public Defender, Minneapolis, MN, for appellant; and Franklin W. LaRose, Cass Lake, MN, pro se.

Considered and decided by RANDALL, Presiding Judge, MINGE, Judge, and PORITSKY, Judge *.

## OPINION

RANDALL, Judge.

On consolidated appeals from separate convictions for felony fifth-degree controlled substance crime (possession of marijuana), appellant argues that the law against possessing marijuana is merely a civil/regulatory law and, thus, the State of Minnesota cannot enforce that law on the Leech Lake Indian Reservation. Appellant also argues that the search warrant in one of the two cases was improperly issued to a reservation peace officer. Appellant further claims that the cooperative agreement between the state and reservation

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art VI, § 10.

officers was invalid, and that, in any event, it did not authorize issuance of search warrants to tribal authorities. Because Minnesota prohibits all marijuana possession, the laws are criminal/prohibitory in nature and, therefore, the state has subject-matter jurisdiction. We find that the search warrant was properly issued to a reservation peace officer. We affirm.

## FACTS

Appellant Franklin William LaRose is an enrolled member of the Leech Lake Band of Ojibwe and resides on the Leech Lake Reservation. On October 5, 2000, pursuant to a tip, law enforcement officers executed a search warrant at appellant's home and searched for marijuana. During the search, officers found approximately 44 marijuana plants on appellant's property and several bags of marijuana in his home.

Appellant was charged in Cass County District Court with fifth-degree possession of marijuana, a felony. Minn.Stat. § 152.025, subd. 2(1) (2002). The district court denied appellant's motion to suppress the marijuana seized during the warranted search of his home and premises located within the Leech Lake Reservation boundaries. The district court also denied appellant's motion to dismiss for lack of subject-matter jurisdiction.

After appellant unsuccessfully challenged the state's jurisdiction to enforce its marijuana-possession laws against tribal members on reservations, the parties agreed to try the case on stipulated facts. Appellant was present in court at this proceeding, but appellant did not personally waive his right to a jury trial. On June 26, 2001, the district court found appellant guilty of fifth-degree possession staying imposition of the sentence and placing appellant on probation for five years pending appeal. On appeal this court affirmed the district court's finding on subject-matter jurisdiction and remanded with directions to the district court to allow appellant to exercise or waive his right to a jury trial. Appellant renewed his jurisdictional challenge on remand.

On July 19, 2001, while the first case proceedings were underway, a second search warrant was issued for appellant's residence to Officer Victoria St. Cyr, a licensed Minnesota peace officer employed by the Leech Lake Department of Public Safety. When executing the search warrant the next day, officers seized a bag containing about one-quarter pound of marijuana from appellant's kitchen table. Appellant was subsequently charged with an additional count of fifth-degree controlled substance crime. In the second proceeding, appellant again challenged subject-matter jurisdiction and also claimed that the search warrant had not been authorized and was improperly issued to a tribal official.

The district court found that the Leech Lake Band had entered into a law enforcement compact with a number of counties, including Cass County, authorizing the Band to enforce criminal laws within the Leech Lake Reservation through the Leech Lake Department of Public Safety ("the Department"). As a licensed Minnesota peace officer and member of the Department, Officer St. Cyr had authority over criminal offenses committed on the reservation. Under this authority, Officer St. Cyr sought the search warrant from the Cass County District Court, which by virtue of Public Law 280 has jurisdiction over criminal offenses committed within the Leech Lake Reservation areas that lie within Cass County. The district court found no constitutional or statutory defect in the issuance of the warrant and denied appellant's motion to suppress.

By this time, the first case had been remanded, and the issue of appellant's

right to a jury trial was back before the district court. Appellant now properly waived his right to a jury trial in both the first and second proceedings and submitted both cases to the district court for trial on stipulated facts. The court found appellant guilty. The court stayed imposition on the first case and placed appellant on probation for five years. On the second case, the court sentenced appellant to a stayed year-and-a-day prison term and five years probation. These appeals followed.

## ISSUES

I. Does the State of Minnesota have subject-matter jurisdiction to enforce its possession of marijuana laws on the Leech Lake Reservation?

II. Did the district court determine correctly that a search warrant was properly issued to a Leech Lake Band Department of Public Safety Law Enforcement Officer (a Minnesota licensed peace officer); was the evidence seized in accordance with that search warrant properly admitted?

## ANALYSIS

### I. Subject-matter jurisdiction

The determination of subject-matter jurisdiction is a question of law, which this court reviews de novo. *State v. Busse*, 644 N.W.2d 79, 82 (Minn.2002); *State v. R.M.H.*, 617 N.W.2d 55, 58 (Minn. 2000), *reh'g denied*, (Oct. 3, 2000). The ability of a state to exercise its jurisdiction over Native American matters is governed by federal statute or case law. *State v. Stone*, 572 N.W.2d 725, 728 (Minn.1997). Absent federal authorization, a state may not assert jurisdiction over Indian tribes. *Bryan v. Itasca County, Minnesota*, 426

U.S. 373, 392, 96 S.Ct. 2102, 2113, 48 L.Ed.2d 710 (1976). In Public Law 280, Congress granted Minnesota broad criminal jurisdiction and limited civil jurisdiction over reservations within the State of Minnesota. 18 U.S.C. § 1162 (1994); 28 U.S.C. § 1360 (1994).[2]

Subject-matter jurisdiction was determined by this court in appellant's first appeal. *State v. LaRose*, No. C1–01–1706 at 6, 2002 WL 977460 (2002). A court's prior ruling on a controlling legal issue becomes law of the case for subsequent proceedings. *Kissoondath v. U.S. Fire Ins. Co.*, 620 N.W.2d 909, 917 (Minn. App.2001). When an appellate court has ruled on an issue of law, the "issue decided becomes 'law of the case' and may not be relitigated … or reexamined." *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.*, 503 N.W.2d 793, 795 (Minn.App.1993). When a court decides upon a rule of law, that decision continues to govern the same issues in subsequent stages in the same case. *Kissoondath*, 620 N.W.2d at 917 (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) (quotations omitted)).

Appellant argues that his earlier appeal involved only his first case. Therefore, while the "law of the case" doctrine may have precluded relitigation of the jurisdictional issue on remand in that case, *but see State ex rel. Farrington v. Rigg*, 259 Minn. 483, 485, 107 N.W.2d 841, 842 (1961) (subject matter jurisdiction cannot be waived), it did not preclude appellant from asserting and litigating the jurisdictional issue when he was charged by a separate complaint with a separate unrelated criminal offense. Under the law-of-the-case doctrine, "issues considered and

**2.** Pub.L. 280 only applies in six states: Alaska, California, Minnesota, Nebraska, Oregon, and Wisconsin. 18 U.S.C. § 1162(a). Red Lake Reservation, in Minnesota, is specifically excluded from Pub.L. 280. *Id.*

adjudicated on a first appeal become the law of the case and will not be reexamined or readjudicated on a second appeal of the *same case.*" *Lange v. Nelson–Ryan Flight Serv., Inc.,* 263 Minn. 152, 155, 116 N.W.2d 266, 269 (1962) (emphasis added). This doctrine is "limited to the *same case* and to only the issue previously decided and is not intended to be carried into other cases as a precedent." *Id.* at 156, 116 N.W.2d at 269 (emphasis added). Also, appellant argues that this Court's prior decision is not controlling in appellant's subsequent prosecution. *See* Minn.Stat. § 480A.08, Subd. 3 (providing that unpublished decisions are not precedential); *but see* Minn.Stat. § 480A.08, Subd. 3(b) (providing an exception where unpublished decisions may be cited as precedent for purposes of *law of the case, res judicata, or collateral estoppel.*)

Further, if this court concludes that appellant is precluded from appealing the jurisdictional issue in one or both of his cases, then appellant argues he must be given the opportunity to withdraw his jury trial waivers. Appellant asserts that he waived his right to jury trials and submitted his cases to the court on stipulated facts so he could preserve and appeal the trial court's jurisdictional rulings. *See State v. Lothenbach,* 296 N.W.2d 854, 858 (Minn.1980) (allowing a defendant to preserve pre-trial issue for appeal by stipulating to evidence and submitting to a bench trial). Appellant contends that by now arguing that the jurisdictional issues may not be reviewed on appeal, the state has breached the terms of the negotiated settlement and rendered appellant's waiver of his right to a jury trial invalid. *See State v. Ross,* 472 N.W.2d 651, 653–54 (Minn. 1991) (jury trial waiver must be knowing, intelligent, and voluntary). Therefore, appellant argues this court must either review the jurisdictional issue or remand to allow appellant an opportunity to withdraw

his jury trial waivers. *See State v. Verschelde,* 595 N.W.2d 192, 197 (Minn.1999) (remanding to allow defendant to withdraw consent to stay of adjudication which was premised on the mistaken belief that he was preserving right to appeal pretrial issue).

We disagree with appellant. Appellant's first case was remanded because his waiver of a jury trial was not set out clearly on the record. It was never in dispute that appellant and his attorney chose the *Lothenbach* method to preserve his jurisdictional issue for appeal. Now the state argues that appellant is precluded from challenging jurisdiction. We do conclude that appellant's proper jury trial waivers are on record, and that review of the jurisdictional issue is not contingent on appellant's opportunity to now go back and renew a claim to a jury trial. However, to satisfy appellant that jurisdiction is resolved, we will again consider jurisdiction.

■ Appellant renews his claim that Minnesota lacks subject-matter jurisdiction to enforce marijuana-possession offenses on reservations, asserting that pursuant to the United States Supreme Court's analysis in *Cabazon,* Minnesota's marijuana-possession laws are regulatory in nature. *See California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 207–08, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987) (holding that states have subject-matter jurisdiction with respect to criminal/prohibitory laws, but not civil/regulatory laws, on certain reservations pursuant to Pub.L. 280).

In *Cabazon,* the Supreme Court held that reservations were not subject to the laws concerning the gaming industry in California because the laws were regulatory in nature and "Congress' primary concern in enacting Pub.L. 280 was combating lawlessness on reservations." 480 U.S. at

208–15, 107 S.Ct. at 1088–91 (citation omitted). Because Pub.L. 280 is aimed at combating lawlessness, the Court approved an analysis focused on whether the law is criminal/prohibitory or civil/regulatory in nature:

> [I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation.

*Id.* at 208–10, 107 S.Ct. at 1088–89 (citation omitted). The Court cautioned that this "is not a bright-line rule." *Id.* at 210, 107 S.Ct. at 1089.

Appellant misconstrues *Cabazon*. In effect, all that *Cabazon* said was that since some parts of California have gambling, California could not forbid it on Indian reservations. *Cabazon* opined that even through the violation of gambling laws can be criminal, since the state regulates legal gambling, gambling is in some respects civil/regulatory in nature. By contrast, Minnesota's marijuana laws are not civil/regulatory. Like the laws governing other illegal drugs, they are criminal laws. To liken it to *Cabazon*, you would need a fact situation where in different parts of California, people could legally possess or possess with intent to sell large or small amounts of marijuana and then the state of California said, "but this could never happen on an Indian reservation." Then the *Cabazon* court might have said that you cannot totally prohibit marijuana possession and/or sale on an Indian reservation since you don't totally prohibit possession and/or sale of it in other parts of the state. That is a hypothetical and is not our facts; and that is not the law in Minnesota. Marijuana possession is not permitted any place in Minnesota. If one possesses a small enough amount, it is called a petty misdemeanor and there is no jail time. However, there is a monetary fine and it is still against the law. Minn.Stat. § 152.027, subd. 4 (2002).

Minnesota has adopted the *Cabazon* analysis with a two-step test:

> The first step is to determine the focus of the *Cabazon* analysis. The broad conduct will be the focus of the test *unless* the narrow conduct presents substantially different or heightened public policy concerns. If this is the case, the narrow conduct must be analyzed apart from the broad conduct. After identifying the focus of the *Cabazon* test, the second step is to apply it. If the conduct is generally permitted, subject to exceptions, then the law controlling the conduct is civil/regulatory. If the conduct is generally prohibited, the law is criminal/prohibitory. In making this distinction in close cases, we are aided by *Cabazon's* "shorthand public policy test," which provides that conduct is criminal if it violates the state's public policy.

*State v. Stone*, 572 N.W.2d at 730 (Minn. 1997) (emphasis in original). Appellant agrees that in his first appeal, this Court applied the *Stone* analysis and concluded that "[b]ecause Minnesota prohibits all marijuana possession, the laws are prohibitory/criminal...." *LaRose*, No C1–01–1706 at 5. Appellant concedes that this court has previously determined that fifth-degree possession of marijuana is a criminal offense and that the state courts have jurisdiction under Pub.L. 280. *See State v. St. Clair*, 560 N.W.2d 732, 734 (Minn.App. 1997). But appellant asserts that, because the court in *St. Clair* did not utilize the *Stone* analysis, somehow, *St. Clair* is not controlling.

Appellant constructs the following argument. Minnesota's drug laws follow federal law. The policy underlying these laws is to protect the "health and general welfare" of the people. *See* 21 U.S.C. § 801(2). Appellant then claims the state legislature has evinced the commonly held belief that marijuana poses less of a threat than other drugs because the legislature decriminalized possession of small amounts of marijuana, Minn.Stat. § 152.027, subd. 4, and recognized that marijuana may have valid medical uses. Minn.Stat. § 152.21. Appellant then argues that since possession of marijuana raises no different or heightened policy concerns, section 152.025, subd. 2(1), must be analyzed as part of the broader conduct of drug possession. *Stone* 572 N.W.2d at 731. Appellant misses the point. Minnesota does have a "heightened public policy" against the possession and use of illegal drugs. Marijuana is an illegal drug even though the penalties are not quite as severe as for other drugs.

Somehow, appellant goes on to argue that possession of marijuana does not violate the state's "public criminal policy" as that term is used in *Stone*. We disagree with appellant. With the narrow exception of certain research purposes not at issue here, Minnesota prohibits all marijuana possession. Possession of even a small amount is prohibited and constitutes a petty misdemeanor, punishable by a fine of up to $200 and participation in a drug-education program. Minn.Stat. § 152.027, subd. 4 (2002), Minn.Stat. § 609.0331 (2002). The Minnesota Supreme Court ruled that broad conduct will be the focus of the test unless the narrow conduct

"presents different or heightened public policy concerns." *Stone,* 572 N.W.2d at 730–31. It was in this latter context that the court specified that "public policy" means the state's "public *criminal* policy" and set out factors to consider in making this determination. *Id.* at 730 (emphasis in original). The possession of marijuana, like other illegal drugs in Minnesota, is criminal/prohibitory, not civil/regulatory. Minnesota has the authority to enforce drug laws on the Leech Lake Indian Reservation pursuant to Pub.L. 280.

The district court has subject-matter jurisdiction over the charge against appellant. *See Stone,* 572 N.W.2d at 731 n. 7 (using *St. Clair* as an example of a clear prohibitory law).

The district court correctly determined it had subject-matter jurisdiction to enforce marijuana possession laws on the Leech Lake Reservation.

## II. Validity of search warrant

Appellant claims that the search warrant in his second case was improperly issued to Officer St. Cyr. The district court ruled that tribal law enforcement officers can exercise concurrent jurisdiction over state criminal offenses if they meet the requirements of Minn.Stat. § 626.93, subd. 2, and have entered into cooperative agreements pursuant to Minn.Stat. § 471.59.[3] Because the Leech Lake Band has entered into such an agreement and Officer St. Cyr was a licensed Minnesota peace officer, the court held that the warrant was properly issued. Where a case is decided on stipulated facts, the only issue on appeal is whether the district court erred in its ap-

---

**3.** State law allows counties to enter into "cooperative agreements" with some tribal authorities, including those authorities governing the Leech Lake Reservation, to "regulate the provision of law enforcement services." Minn.Stat. 626.93, subd. 2 (2002). Under these agreements, a tribe has concurrent jurisdictional authority with the local county sheriff to enforce state criminal law within the geographical boundaries of the tribe's reservation. Minn.Stat. 626.93, subd. 3.

plication of the law. *Boldt v. Roth,* 604 N.W.2d 117, 119 (Minn.App.2000) (citing *Reads Landing Campers Ass'n v. Township of Pepin,* 546 N.W.2d 10, 13 (Minn. 1996)). The application of the law to stipulated facts is a question of law, which this court reviews de novo. *Boldt,* 604 N.W.2d at 119 (citing *Morton Bldgs., Inc. v. Commissioner of Revenue,* 488 N.W.2d 254, 257 (Minn.1992)).

## Authority to Enter Into Cooperative Agreement with Concurrent Jurisdiction

██ Appellant argues that the district court's ruling is premised on the erroneous assumption that the state had the authority to enter into a "cooperative agreement" with the Leech Lake Band of Ojibwe for the enforcement of state criminal laws. Appellant constructs the following argument. He claims that by enacting Public Law 280, the federal government ceded authority to Minnesota to enforce state criminal laws within the boundaries of the Leech Lake Reservation. *Stone,* 572 N.W.2d at 729. The law was later amended to allow the states to retrocede their jurisdiction to the federal government. Pub.L. No. 90–284, 82 Stat. 78 (1968) (codified as amended at 25 U.S.C. § 1323). Appellant argues that the federal government allows retrocession, but has not expressly authorized the state to share its authority to enforce state law with tribal authorities. Thus, appellant claims the cooperative agreement with the Leech Lake Reservation authorities violates federal law.

Minnesota's authority to enter into law enforcement compacts has been previously considered and upheld by this court. *See State v. Manypenny,* 662 N.W.2d 183 (Minn.App.2003), *review granted* (Minn. Aug. 19, 2003). The defendant in *Manypenny* also argued that Pub.L. 280 did not provide authority for the state to cede criminal jurisdiction to Indian Tribes. *Id.* at 187. In *Manypenny,* the court rejected appellant's interpretation of Pub.L. 280 and stated:

What appellant sets up for this court is a false dichotomy. Public Law 280 does not prohibit cooperative agreements. It does not require states to consent to retrocession requests from tribal governments. Nor does it prohibit tribes and state governments from entering into mutually beneficial agreements to provide law-enforcement services that are well short of the retrocession standard. In short, although appellant argues otherwise, law enforcement on Indian reservations is not an either-or proposition.

*Manypenny,* 662 N.W.2d at 188. There is no authority, implied or stated, that requires a Public Law 280 state to expressly retrocede its jurisdiction to enforce criminal laws if it wants to enter into cooperative agreements with Indian tribes. In *Manypenny,* the court recognized that the State "has entered into 'cooperative agreements' with some tribal authorities, including those authorities governing the White Earth Reservation, to 'regulate the provision of law enforcement services.'" *Id.* at 187 (citing Minn.Stat. § 626.93, subd. 4 (2002)). Under these agreements, a tribe has concurrent jurisdictional authority with the local county sheriff to enforce state criminal law within the geographical boundaries of the tribe's reservation. Minn.Stat. § 626.93, subd. 3 (2002), *see also* Minn.Stat. §§ 626.90–.93 (2002) (authorizing the Mille Lacs Band of Chippewa Indians, the Lower Sioux Indian community, and the Fond du Lac of Lake Superior Chippewa to establish law enforcement authorities). The court in *Manypenny* held that cooperative agreements between an Indian band and the state do not violate federal law. *Manypenny,* 662 N.W.2d at 188. *Manypenny* is persuasive. Appellant has failed to show the cooperative

agreement between the Leech Lake Band of Ojibwe and the state is invalid.

### Validity of Search Warrant

■ Appellant next contends that, even if the cooperative agreement with the Leech Lake Band is lawful, Minnesota law does not authorize the issuance of search warrants to tribal authorities and any evidence seized pursuant to that warrant should be suppressed. Appellant bases his argument on the definition of "peace officer" in Minn.Stat. § 626.05, subd. 2 (2002). Here appellant concedes that Officer St. Cyr was a duly state-licensed peace officer employed by the Leech Lake Band Department of Public Safety (in accordance with section 626.84, subd. 1). But he argues that since she was not *also* acting in any of the official capacities delineated in section 626.05, the district court had no authority to issue her a search warrant. Appellant argues that because the legislature has made several semantic changes to sections 626.05 and 626.11, it would have added specific language to include "tribal law enforcement officials" if that is what it had intended.[4]

The statutes that authorize compacts between law enforcement agencies provide for concurrent jurisdiction over criminal offenses. By virtue of State law, the Leech Lake Band law-enforcement agency and its officers as a governmental unit would have the same authority as officers from other governmental units. *See* Minn. Stat. § 626.93, subd. 3, 4 (2002) (a tribe is considered a "governmental unit"). Authority for governmental units entering agreements is addressed in Minn. Stat § 471.59, which provides:

> Services performed by governmental units; commonality of powers. Notwithstanding the provisions of subdivision 1 requiring commonality of powers between parties to any agreement, the governing body of any governmental unit as defined in subdivision 1 *may enter into agreements with any other governmental unit to perform on behalf of that unit any service or function which the governmental unit providing the service or function is authorized to provide for itself.*

Minn.Stat. § 471.59, subd. 10 (2002) (emphasis added). Peace officer authority is further addressed in subdivision 12:

> Joint exercise of police power. In the event that an agreement authorizes the exercise of peace officer or police powers by an officer appointed by one of the governmental units within the jurisdiction of the other governmental unit, *an officer acting pursuant to that agreement has the full and complete authority of a peace officer as though appointed by both governmental units* and licensed by the state of Minnesota, provided that:
>
> (1) the peace officer has successfully completed professionally recognized peace officer preemployment education which the Minnesota board of peace officer standards and training has found

---

4. The legislature amended section 626.11 in 2001 by substituting the phrase "having jurisdiction in the area where the place to be searched is located" for "in the judge's county," *see* Laws 2001, c. 78, § 2, and in 2002 by inserting the phrase "to an officer of the metropolitan transit police." *See* Laws 2002, c. 291, § 5. Also in 2002, the legislature deleted the word "constable" from and inserted "metropolitan police officer" into section 626.05's definition of "peace officer." Laws 2002, c. 291, § 4. Appellant claims that this history demonstrates the legislature had full opportunity to authorize the issuance of search warrants to tribal law enforcement officials if it wanted to do so. *See White v. State*, 400 N.W.2d 153, 157 (Minn.App.1987) (recognizing that changes to clear and unambiguous statutes must be made by legislature and not judicial fiat).

comparable to Minnesota peace officer preemployment education; and

(2) the officer is duly licensed or certified by the peace officer licensing or certification authority of the state in which the officer's appointing authority is located.

Minn. Stat § 471.59, subd. 12 (2002) (emphasis added). Moreover, Minn.Stat. § 626.93, subd. 3, expressly provides for concurrent jurisdiction for tribal officers:

If the requirements of subdivision 2 are met and the tribe enters into a cooperative agreement pursuant to subdivision 4, the tribe shall have concurrent jurisdictional authority under this section with the local county sheriff within the geographical boundaries of the tribe's reservation to enforce state criminal law.

In accordance with these statutory provisions, Officer St. Cyr had complete peace officer authority to exercise concurrent jurisdiction on the Leech Lake Reservation. In this case, Officer St. Cyr acted with the same authority as a sheriff or deputy sheriff from Cass County. Because Officer St. Cyr was acting with the authority of a sheriff or deputy sheriff, she falls within the definition of "peace officer" provided in Minn.Stat. § 626.05, subd. 2 (2002).

In reviewing the application for the search warrant, the district court judge considered the terms of Minn. Stat § 626.11 (2002), which provides:

If the judge is satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, the judge must issue a signed search warrant, naming the judge's judicial office, to a peace officer having jurisdiction in the area where the place to be searched is located. . . .

The judge found probable cause, and recognized that Officer St. Cyr, as a licensed peace officer, had jurisdiction in the area where the place to be searched was located.

In later review of the warrant, the district court found no constitutional or statutory defect with its issuance. The district court further concluded that, even if there had been statutory violations associated with the issuance of the warrant, they were merely technical and would not warrant suppression of evidence. "The exclusionary rule does not apply to technical violations of the statutes governing search warrants, where no constitutional violation is involved." *State v. Lunsford,* 507 N.W.2d 239, 243 (Minn.App.1993). In *Lunsford,* a police officer from a community in one county sought and received a search warrant from a judge of a different county. *Id.* at 242. Although this court held that the warrant was improperly issued and executed based on its reading of Minn.Stat. § 626.11 (2002), which provides that "the authority to issue warrants is limited to peace officers in the judge's county or agents of the Bureau of Criminal Apprehension," the court in *Lunsford* ultimately concluded that this was a technical violation and application of the exclusionary rule was not justified under those circumstances. *Id.* at 243.

Appellant argues that the present case is distinguishable from *Lunsford.* He asserts that this is not a case where the court issued a warrant to a "peace officer" from another county; but rather, the court issued a search warrant to someone who is not a "peace officer" as that term is defined in the applicable state statute. Therefore, appellant alleges that rather than a mere technical violation of the statute, the court's action here directly undermined the legislature's clear intent to restrict the issuance of search warrants to certain officials. This whole analytical exercise is unnecessary. Under the *Lunsford* analysis, there is no defect, *technical*

*or otherwise.* The officer seeking the warrant and the judge issuing the warrant had jurisdiction over the person and the place to be searched; both had statutory authority to act.

Law enforcement agreements between the counties and the tribes are valid agreements within the authority of the State of Minnesota. *Manypenny,* 662 N.W.2d at 188. Officers exercising concurrent jurisdiction under those agreements are empowered to enforce the criminal laws of the state. The exercise of that authority provided by Minnesota law does not adversely affect the constitutional rights of appellant. The district court properly denied appellant's motion to suppress evidence obtained pursuant to the search warrant.

**Appellant's Pro se Brief**

 It is settled that an appellate court may not base its decision on matters outside the record. *Plowman v. Copeland, Buhl & Co. Ltd.,* 261 N.W.2d 581, 584–585 (Minn.1977); *Moose v. Vesey,* 225 Minn. 64, 67, 29 N.W.2d 649, 652 (Minn.1947). In *Plowman,* the Supreme Court explained that there are very limited exceptions to this rule. However, the production of new evidence not already in the record is never allowed in an appellate court for the purpose of reversing a judgment. *Plowman,* 261 N.W.2d at 584 (citing *Mattfeld v. Nester,* 226 Minn. 106, 32 N.W.2d 291 (Minn. 1948)). Appellant's pro se submission was offered to the Court of Appeals to support reversal of the district court and will not be considered as it is outside the record. The record does show that in its decision, the district court acknowledged receiving a memorandum signed by appellant on his own behalf. But, the memorandum was received *after* the time for submittals to the court had passed; the district court did not make any findings or conclusions on issues raised in appellant's memorandum; the issues had not been raised at the time of the omnibus hearing; no evidence was introduced related to appellant's submission.[5] The cases involved in this appeal were both submitted and decided on stipulated facts. Appellant's pro se submission and affidavit were not part of the stipulation before the district court.

In appellant's pro se brief, he attempts to submit additional materials into the record in an effort to challenge the constitutionality of Congress' plenary power over Indian Affairs and its authority to enact laws such as Public Law 280. Although we do not decide this issue, we can only note that, in this area, appellant "faces formidable obstacles." First, federal statutes enjoy a presumption of constitutionality. *Rostker v. Goldberg,* 453 U.S. 57, 64, 101 S.Ct. 2646, 2651, 69 L.Ed.2d 478 (1981). This deference acknowledges Congress' role as a policy-making branch of the United States government. Second, courts have been reluctant to interfere with Congress' acknowledged plenary power over Indian Affairs. *See Littlewolf v. Lujan,* 877 F.2d 1058, 1063 (D.C.Cir.1989). The court in *Littlewolf* acknowledged that, though plenary, Congress' power is not absolute. "While extending to all appropriate measures for protecting and advancing the tribe, it is subject to limitations inhering in ... a guardianship and to pertinent constitutional restrictions." *United States v. Sioux Nation of Indians,* 448 U.S. 371, 415, 100 S.Ct. 2716, 2741, 65 L.Ed.2d 844 (1980) (quoting *United States v. Creek Nation,* 295 U.S. 103, 110, 55

---

**5.** The district court further found that the claims raised by appellant and the facts sought to be introduced were beyond the scope of the issues in this case and would have to be pursued through the federal government, whether that be the courts, the Bureau of Indian Affairs, or Congress.

S.Ct. 681, 684, 79 L.Ed. 1331 (1935)). The court in *Littlewolf* held that the guardian-ward relationship derives from the historical status of Indian tribes, as "domestic dependent nations," (quoting *Cherokee Nation v. Georgia*, 30 U.S. 5 Pet. 1, 17, 8 L.Ed. 25 (1831)), and the correspondingly pervasive federal control over Indians as embodied in treaties and statutes.[6] *Littlewolf*, 877 F.2d at 1063.

In this case, Congress expressly acknowledged its role as a guardian in trying to address the problems of lawlessness on reservations in enacting Public Law 280, a law that affects six states, including Minnesota.

### DECISION

We find that Minnesota's marijuana laws are criminal/prohibitory in nature, and we again find that the state has subject-matter jurisdiction in this case. The cooperative agreement between the Leech Lake Band of Ojibwe and the State of Minnesota is valid; a licensed peace office and member of the Leech Lake Department of Public Safety has authority over criminal offenses committed on the reservation. Finally, the search warrant was properly issued. Officer St. Cyr is a licensed Minnesota police officer. The district court properly denied the motion to suppress.

**Affirmed.**

---

6. The Supreme Court has repeatedly held that through its plenary power, Congress can abrogate treaty provisions unilaterally without the consent of a tribe. *Rosebud Sioux Tribe v.* *Kneip*, 430 U.S. 584, 594, 97 S.Ct. 1361, 51 L.Ed.2d 660 (1977); *Lone Wolf v. Hitchcock*, 187 U.S. 553, 566, 23 S.Ct. 216, 47 L.Ed. 299 (1903).